**Darel William BETZ, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–714 T.**

United States Court of Federal Claims.

Feb. 3, 1998.

Darel William Betz, Cheney, WA, Pro se.

Robert N. Dorosin, Washington, DC, for defendant, with whom were Assistant Attorney General Loretta C. Argrett, Mildred L. Seidman, and David Gustafson.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss, in part, for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), and for summary judgment pursuant to RCFC 56 on the remaining tax refund claim. Plaintiff, proceeding *pro se*, also filed a cross-motion for summary judgment pursuant to RCFC 56. For the rea-

sons set forth below, the court grants defendant's motion in its entirety, and denies plaintiff's motion.

## BACKGROUND

Plaintiff Darel William Betz was born on September 16, 1947, in Spokane, Washington, to parents who were United States citizens. During the years 1990 through 1992, plaintiff was employed in farming by Betz Farms, Inc. ("Betz Farms"), and resided, in Cheney, Washington. During this period, plaintiff neither left the United States nor resided in a foreign country.

As reported on his Forms W–2 by Betz Farms, plaintiff earned $5830 in 1990, $6345 in 1991, and $5790 in 1992 in employment wages. Plaintiff also had gambling winnings of $2111.60 in 1992, as reported on his 1992 Form W–2G. Plaintiff failed to file timely income tax returns for these years.

Instead, on June 3, 1993, plaintiff filed with the Internal Revenue Service ("IRS") Forms 1040NR ("Nonresident Alien Income Tax Return") for each of the years 1990, 1991, and 1992.[1] Appended to the Forms 1040NR for each year were the applicable Forms W–2. A Form W–2G was also attached to the 1992 1040NR. On the Forms 1040NR, plaintiff listed zero total effectively connected income, zero adjusted gross income, zero taxable income, and zero income tax liability. On almost every line of each return, plaintiff entered either the figure "0" (zero) or "N/A." On each return, plaintiff claimed to be exempt from federal income taxes on the grounds that he was a nonresident alien and not a United States citizen, but instead a citizen of "Cheney, Washington State," with his resident country listed as "The Several States." Where requested on the returns to provide the address "outside the United States" where the taxpayer would like any refund mailed, plaintiff wrote "Same," indicating his present address in Cheney, Washington. Where asked to identify the country where he was a citizen or national for the

year, plaintiff responded "N/A" on each of the forms. Plaintiff responded "N/A" to questions relating to his passport and visa, the nature of his visit to the United States, whether he had given up his permanent residence as an immigrant to the United States, and whether he had excluded any gross income from foreign source income not effectively connected with a United States trade or business. In response to the inquiry on each form pertaining to the number of days he was present in the United States during the tax year in question, plaintiff wrote "0" (zero). In response to an inquiry as to the dates he entered and left the United States, for each year plaintiff responded "Did not enter federal territory." Finally, above his signature for the declaration under penalty of perjury, plaintiff crossed out the phrase "other than taxpayer," and inserted "with expressed reservation of all my rights in law and equity, [on his 1992 1040NR, plaintiff inserted the word "common"] and all other natures of law; past present and future."

On each of the returns, plaintiff demanded the refund of all federal tax withholdings on the appended Forms W–2 and W–2G—$398.25 for 1990, $478 for 1991, and $771 for 1992, for a total of $1647.25. The IRS refused to process these forms 1040NR as returns, and subsequently assessed against plaintiff frivolous return penalties under 26 U.S.C. § 6702 (1994) for each of the years 1990 through 1992. Plaintiff failed to pay the penalties.

On July 12, 1993, the IRS filed federal tax liens in the Seattle, Washington District and with the County Auditor in Spokane County, Washington, against plaintiff's residence for the unpaid section 6702 penalties for 1990 through 1992, along with unpaid penalties for 1983 and 1985, and for unpaid federal income taxes for 1981, 1982, and 1984. On November 18, 1993, the IRS served a notice of levy on plaintiff's employer, Betz Farms, for the unpaid balances in plaintiff's account for these deficiencies.

---

1. On March 8, 1993, plaintiff sent a "statement" to the IRS demanding "charges" allegedly owed to him in the amount of $398.25 for a 1990 Form 1040NR allegedly filed October 19, 1992, $478 for a 1991 Form 1040NR allegedly filed October 19, 1992, and $771 for a 1992 Form 1040NR allegedly filed January 14, 1993. The IRS's administrative files, however, contain only the Forms 1040NR filed with the IRS on June 3, 1993.

On February 8, 1995, plaintiff filed with the IRS Forms 843 claims for refund with enclosures, including a "Certificate of Exemption From Withholding In Lieu of Form W-4," and a letter explaining why he was and is not required to pay federal income taxes. Plaintiff demanded refunds of his entire federal tax withholdings as reported on his Forms 1040NR for the years 1990, 1991 and 1992. On February 16, 1995, the IRS issued a statutory notice of claim disallowance to plaintiff for each of these years. Plaintiff responded on March 7, 1995, by filing a supplemental statement with the IRS arguing that he was and is not subject to federal income taxes.

Plaintiff filed a complaint in this court on November 7, 1996, and subsequently filed an amended complaint on May 6, 1997. Plaintiff's complaint and amended complaint do not clearly identify the theories of liability on which he relies. Because plaintiff is proceeding *pro se*, however, and because he is faced with a motion to dismiss in part and for summary judgment, he is entitled to have his complaint and amended complaint construed as alleging all fairly and reasonably inferable claims. The court construes plaintiff's complaint and amended complaint as seeking: (1) a tax refund of $1647.25;[2] (2) injunctive relief to remove the liens on his property and the liens on his wages;[3] (3) a declaratory judgment that he is not liable for federal income taxes; (4) non-economic (tort) damages of $69,786.00, and an unspecified amount of punitive damages for alleged conversion; (5) damages (no amount stated) for violations by the IRS of his Fifth Amendment rights to due process and his privilege against self-incrimination, and his apparent claim of a taking; (6) damages of $1,000,000, under 26 U.S.C.A. § 7433 (West Supp.1997), for unauthorized collection by the IRS; and

(7) administrative fees and litigation costs under 26 U.S.C.A. § 7430 (West Supp.1997).

Defendant has moved, pursuant to RCFC 56, for summary judgment on plaintiff's tax refund claim. In addition, defendant has moved, pursuant to RCFC 12(b)(1), to dismiss the remaining claims for lack of subject matter jurisdiction. Approximately six months after defendant filed its motion to dismiss and for summary judgment, plaintiff filed a cross-motion for summary judgment. For the reasons set forth below, the court grants defendant's motion, and denies plaintiff's motion.

## DISCUSSION

### I. Motion to Dismiss

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the nonmoving party. *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The nonmoving party then bears the burden of establishing jurisdiction. *See id.* at 748. Only contested facts relevant to subject matter jurisdiction must be decided by the court. *See id.* at 747. Although the court must generally assume the truth of unchallenged facts when deciding its jurisdiction, the court is not required to accept plaintiff's framing of the complaint. *Lewis v. United States*, 32 Fed.Cl. 301, 304 (1994) (citations omitted), *aff'd*, 70 F.3d 597 (Fed. Cir.1995). Rather, the court should look to plaintiff's factual allegations to ascertain the true nature of the claims, as well as matters outside the pleadings. *Lewis*, 32 Fed.Cl. at 304 (citations omitted).

 The Tucker Act defines the jurisdiction of this court as follows:

---

**2.** Plaintiff requests, in his original complaint, a tax refund totaling $1643.25, and in his motion for summary judgment he seeks the same tax refund, but in the amount of $1642.25. Because, however, the total amount withheld from plaintiff's earnings for 1990–1992, and the amount listed on the IRS's statutory claim disallowance, totaled $1647.25, the court will assume plaintiff seeks $1647.25.

**3.** Plaintiff's original and amended complaints are for the tax years 1990, 1991, and 1992. Although plaintiff stated in his opposition to defendant's motion that "Plaintiff's first amended brief is for years 1993–1996 (lien, levy imposed)," the only tax years properly before this court are 1990, 1991 and 1992. *See* Pl.'s Opp.'n to Def.'s Mot. to Dismiss the Compl. in Part and for Summ. J. at 10.

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1) (West Supp.1997). "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (citations omitted). The Tucker Act "does not create any substantive rights enforceable against the United States for money damages," *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), but rather confers jurisdiction when a waiver of the traditional sovereign immunity is "unequivocally expressed" and a substantive right to money damages exists. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501 1502–03, 23 L.Ed.2d 52 (1969) (citing *Sherwood,* 312 U.S. 584, 61 S.Ct. 767). Plaintiff must therefore show that its claim is for money damages and that the federal statute on which it relies can be interpreted as mandating compensation by the federal government for the damage sustained. *Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (citations omitted). Thus, although plaintiff purports in his complaint to confer jurisdiction himself, by stating that "[t]he court's jurisdiction of subject matter [is] granted by plaintiff," Compl. at 6, this court may not hear his claims unless they fall within the statutorily conferred jurisdiction of this court.[4]

**A. Dismissal of Claims for Injunctive and Declaratory Relief**

■ Among plaintiff's claims for relief are two that are based in equity, including requests for: (1) a declaratory judgment that plaintiff is not liable for any type of federal income tax; and (2) an injunction in the form of permanently removing the liens on plaintiff's property and levies on his wages. Except in narrow circumstances inapplicable here, the Tucker Act does not authorize the Court of Federal Claims to grant declaratory or injunctive relief of the type requested by plaintiff. *See King,* 395 U.S. at 3–5, 89 S.Ct. at 1502–03 (holding that declaratory judgments are beyond the scope of the Court of Claims' jurisdiction); *see also Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) (holding that demands by tax protesters for declaratory or injunctive relief are outside of the jurisdiction of the Court of Federal Claims).

■ In addition, the Anti–Injunction Act, 26 U.S.C. § 7421(a) (1994) ("AIA"), prohibits any court from granting such an injunction, providing that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Plaintiff, however, apparently asserts that the AIA is inapplicable because of its statutory exception for deficiency procedures under 26 U.S.C. § 6212(a) (1994). *See* 26 U.S.C. § 7421(a). This section, along with 26 U.S.C. § 6213(a) (1994), provides that if the IRS files a preassessment notice of deficiency and the taxpayer in turn files a timely petition for redetermination of a tax deficiency with the Tax Court, no levy or other collection procedure may commence until the decision of the Tax Court has become final. *See* 26 U.S.C. §§ 6212(a), 6213(a). The IRS, however, did not issue any statutory notices of deficiency against plaintiff for the years 1990 through 1992, and plaintiff never filed a petition in the Tax Court for these years. Therefore, this exception to the AIA is inapplicable to the case at bar. As a result of the foregoing, plaintiff's request for a declaratory judgment and for injunctive relief are dismissed for lack of subject matter jurisdiction.

---

4. Plaintiff also asserts that this court has jurisdiction over his claims under 28 U.S.C. § 2502 (1994), which allows certain foreign individuals to sue the United States in the Court of Federal Claims. Despite plaintiffs beliefs, however, he is not a foreign individual, and may not assert jurisdiction under this statute.

## B. Dismissal of Claims Sounding in Tort

■ Defendant also moved to dismiss, for lack of subject matter jurisdiction, plaintiff's claims sounding in tort. Plaintiff seeks "non-economic damages" of $69,786.00, under WASH. REV. CODE § 4.56.250 (1988),[5] for defendant's alleged unlawful imposition of liens and levies upon plaintiff's property and wages resulting in "subjective, non-monetary losses, including, but not limited to pain, suffering, inconvenience, mental anguish, [. . .], emotional distress, [. . .], injury to reputation, and humiliation [. . . .]" Pl.'s Compl. at 8 (citing WASH. REV. CODE § 4.56.250). Plaintiff further seeks an unspecified amount of punitive damages and other money damages for alleged "conversion." All of these claims for relief are premised on alleged negligent, wrongful, or unauthorized conduct by the IRS, and therefore sound in tort. The Tucker Act expressly excludes tort claims from the jurisdiction of the Court of Federal Claims. 28 U.S.C.A. § 1491(a)(1) (stating that the Court of Federal Claims can issue a judgment for money damages "in cases not sounding in tort"); see Curry v. United States, 221 Ct.Cl. 741, 609 F.2d 980, 983 (1979) (stating that a suit for alleged emotional distress, anguish, and humiliation clearly sounds in tort and is outside of the court's jurisdiction); see also Brown v. United States, 36 Fed.Cl. 290, 298 (1996) (claims of injury to reputation as a result of the filing of liens and levies sound in tort and are outside of the court's jurisdiction). Plaintiff's claims for relief under Washington state law are also clearly outside of the jurisdiction of this court. Therefore, plaintiff's claims sounding in tort are dismissed for lack of subject matter jurisdiction.

## C. Dismissal of Claims of Violations of Fifth Amendment Rights

Defendant moved to dismiss, for lack of subject matter jurisdiction, plaintiff's claims that the IRS violated his Fifth Amendment rights to due process of law and his privilege against self-incrimination, and plaintiff's apparent claim of a taking.

### 1. Due Process Claim

■ Plaintiff claims that the alleged unlawful actions by the IRS in placing liens on his residence and levying his wages are in contravention of his rights to due process.[6] While the Tucker Act provides for the Court's jurisdiction over claims "founded . . . upon the Constitution," 28 U.S.C.A. 1491(a)(1), either the constitutional provision at issue or a federal statute must mandate the payment of money damages as compensation in order for jurisdiction to attach. Testan, 424 U.S. at 401–02, 96 S.Ct. at 954–55. Although the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation. Murray v. United States, 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing Inupiat Community of the Arctic Slope v. United States, 230 Ct.Cl. 647, 680 F.2d 122, 132 (1982)). Therefore, plaintiff's due process claim does not fall within the narrow jurisdictional provisions of the Tucker Act, and is dismissed for lack of subject matter jurisdiction.

### 2. Self-incrimination Claim

■ Plaintiff also claims that his Fifth Amendment privilege against self-incrimination was violated because his property was taken, in the form of the liens and levies,

5. It should be noted that this section of the Washington Code, which actually limits the amount of "noneconomic damages" resulting from a jury verdict for a tort claimant, was found, in Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711, as amended, 112 Wash.2d 636, 780 P.2d 260 (1989), to violate the state constitutional right to trial by jury.

6. While it is unclear from plaintiff's complaint as to whether he alleges violations of his right to due process stemming from the Washington

State Constitution, which provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law," WASH. CONST. ART. 1, § 3, or the United States Constitution as described above, any allegation of a violation of due process of law under the Washington state Constitution would also not be within the jurisdiction of this court, as the Tucker Act contemplates only violations of federal statutes. See 28 U.S.C.A. § 1491(a)(1).

without the provision of *Miranda* rights.[7] The Fifth Amendment privilege against self-incrimination does not, in itself, require the payment of money for its violation, regardless of whether *Miranda* warnings were provided. Thus, this court does not have jurisdiction under the Tucker Act over this claim. 28 U.S.C.A. § 1491(a)(1); *see Murray*, 817 F.2d at 1583. In addition, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which developed rules related to the questioning of an individual in police custody, is inapplicable because plaintiff was not in police custody, nor was he questioned, nor were any confessions sought of him. Therefore, plaintiff's claim of violation of his privilege against self-incrimination is dismissed for lack of subject matter jurisdiction.

### 3. Takings Claim

■ Although not explicit, the court reads plaintiff's *pro se* complaint as alleging that the United States exacted a taking, without the "just compensation" required by the Fifth Amendment, by imposing the liens on plaintiff's property and the levies on his wages. Although certain takings claims are within the jurisdiction of this court, *see, e.g., Murray*, 817 F.2d at 1583–84, actionable "takings" can only result from *authorized* acts of government officials. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir.1993). If plaintiff claims that the alleged taking was authorized, but improper, the appropriate course of action is a direct challenge of the liens and levies, not the prosecution of a Fifth Amendment claim. *Castillo Morales v. United States*, 19 Cl.Ct. 342, 345 (1990) (citations omitted). On the other hand, if plaintiff claims that the alleged taking was *unauthorized*, that claim would sound in tort, and this court would not have jurisdiction. *Earnest v. United States*, 33 Fed.Cl. 341, 344 (1995) (citation omitted). Therefore, regardless of how plaintiff frames the issue, this court does not have jurisdiction to render judgment on such a claim. As a result, plaintiff's claim of a Fifth Amendment taking is dismissed for lack of subject matter jurisdiction.

### D. Claim for Money Damages for Unauthorized Collections

■ Defendant moves to dismiss, for lack of subject matter jurisdiction, plaintiff's claim for money damages for unauthorized collections by the IRS. Plaintiff alleges that under 26 U.S.C.A. § 7433,[8] the government is liable for civil damages of $1,000,000 for unauthorized collection actions by the IRS in serving notices of levy on his employer and filing liens on his residence. Section 7433(a), however, specifically states that any action brought under this provision must be brought exclusively "in a district court of the United States." 26 U.S.C.A. § 7433(a). Because this action was brought in the United States Court of Federal Claims, and not in a United States district court, this claim is dismissed for lack of subject matter jurisdiction.

### II. Summary Judgment

Defendant moves for summary judgment on plaintiff's remaining claim for a tax refund. Summary judgment is appropriate when there exist no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

---

7. Plaintiff asserts that he "has had no Miranda warnings ...," Pl.'s Compl. at 10, and that he "reserves all ... Constitutional rights pursuant to *Miranda v. Arizona* ...." Pl.'s Am. Compl. at 5. Again, as plaintiff proceeds *pro se,* the court will liberally construe plaintiff's complaint and articulate why the court lacks jurisdiction over plaintiff's claims.

8. Plaintiff cites to "H.R. 2337 104th Congress," "Sec. 801(a) page 13," a bill in the 104th Congress proposing to amend the Internal Revenue Code with the "Taxpayer Bill of Rights," in support of his claim for money damages for unauthorized collection actions by the IRS. The "Taxpayer Bill of Rights" was subsequently passed into law and codified in several sections of Title 26 of the United States Code. The $1,000,000 damage reward for unauthorized collection actions by the IRS was codified at 26 U.S.C. 7433, and the court will assume, to plaintiff's benefit, that plaintiff asserts his claim under 26 U.S.C. 7433.

L.Ed.2d 202 (1986). The court does not weigh the evidence; it only determines questions of law based upon undisputed facts. Disputes over facts which are not outcome determinative, however, will not preclude the entry of judgment. *Id.* at 248, 106 S.Ct. at 2510. When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir.1975); *see also Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978).

■■■■ When the parties have filed cross-motions for summary judgment, as in this case, the court must evaluate each party's motion on its own merits. The court's duty to decide whether summary judgment is appropriate is not abrogated by the fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of fact for trial. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed. Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed. Cir.1987)); *see also Bataco Indus., Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed.Cir.1994). Summary judgment will not necessarily be granted to one party or another simply because both parties have so moved. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir. 1968)). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco,* 29 Fed.Cl. at 322. The court must evaluate each party's motion independent of the other, and resolve all reasonable infer-

ences against the party whose motion is under consideration. *Mingus Constructors,* 812 F.2d at 1391. For the reasons set forth below, defendant's motion for partial summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

Plaintiff claims that he is entitled to a refund of his 1990–1992 federal tax withholdings totaling $1647.25, because he is not a citizen of the United States and is therefore not subject to its laws. Plaintiff claims that he is a nonresident alien or "foreign individual of America" in relation to the United States, and that his residence and citizenship rest solely with the State of Washington, "a free, independent, sovereign, territory" with "coequal authority with the other compact states of America." According to plaintiff, the territorial limits of the United States are confined to federal areas, which consist of the District of Columbia, military posts, naval bases, and miscellaneous federal enclaves. Thus, under plaintiff's approach, the laws of the United States, including the United States Constitution and the Internal Revenue Code ("I.R.C."), apply only to the United States Government, to citizens and residents of the above federal areas, and to federal civil service employees. Such laws, according to plaintiff, do not apply to the citizens and residents of the so-called "compact states," or the fifty states comprising the United States, over which he alleges Congress has no jurisdiction. Because plaintiff's allegations present no issues of genuine material fact, the court addresses his contentions as a matter of law.

**A. Plaintiff is a Citizen of Both the State of Washington and the United States**

■■■■ Despite plaintiff's creative argument, the court takes judicial notice of the fact that the state of Washington is one of the fifty states that comprise the United States of America, entering the Union in 1889 as the forty-second state.[9] *See B.V.D.*

---

9. The court refers plaintiff to his "Exhibit 6" attached to his November 7, 1996 complaint. Exhibit 6 is an excerpt from the "Washington State—1993 Data Book," which on page "iv" documents important dates in the state of Wash-

*Licensing Corp. v. Body Action Design, Inc.,* 846 F.2d 727, 728 (Fed.Cir.1988) (stating that "[c]ourts may take judicial notice of facts of universal notoriety, which need not be proved, and of whatever is generally known within their jurisdictions") (citing *Brown v. Piper,* 91 U.S. 37, 42, 23 L.Ed. 200 (1875)). In addition, the Random House Dictionary defines Washington (referring to the state) as "a state in the NW [northwest] *United States,* on the Pacific coast." RANDOM HOUSE UNABRIDGED DICTIONARY 2145 (2d ed.1993) (emphasis added). The Fourteenth Amendment states that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. CONST., AMEND. XIV, § 1. Plaintiff, therefore, along with being a citizen of the state of Washington, is a United States citizen because he was born in Washington State to parents who were United States citizens.

**B. State Citizens are Bound by the Laws of the United States, Including the I.R.C.**

■ Along with his claim that he is not a United States citizen, plaintiff further claims that federal laws, including the I.R.C., do not apply to citizens of the state of Washington, a "compact state." Article I, section 8 of the United States Constitution grants Congress the power to "lay and collect Taxes." U.S. CONST., ART. 1, § 8. The Sixteenth Amendment, ratified on February 25, 1913, modified the requirements in Article 1, sections 2 and 9, that taxes had to be apportioned and in proportion to the census. U.S. CONST., ART. 1, §§ 2, 9, AMEND. XVI. The Sixteenth Amendment provides that "Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. CONST., AMEND. XVI. Despite plaintiff's and numerous other tax protesters' contention that the Sixteenth Amendment was never ratified, courts have long recognized the Sixteenth Amendment's ratification and validity. *See United States v. Sitka,* 845

F.2d 43, 46–47 (2nd Cir.1988) (holding that "[t]he validity of that process and of the resulting constitutional amendment are no longer open questions"). Pursuant to the authority vested in Congress under the Sixteenth Amendment to impose a direct income tax on citizens and residents of the United States comprised of the 50 states and the District of Columbia, Congress enacted Title 26 of the United States Code, the Internal Revenue Code.

■ The I.R.C. applies to "United States persons," defined as "citizen[s] or resident[s] of the United States." 26 U.S.C. § 7701(a)(30)(A) (1994). In addition, the I.R.C.'s definition of "United States" includes "the States and the District of Columbia." 26 U.S.C. § 7701(a)(9) (1994). Plaintiff regards himself as a "nonresident alien," defined as an individual who is "neither a citizen of the United States nor a resident of the United States . . . ." 26 U.S.C. § 7701(b)(1)(B) (1994). As stated above, however, plaintiff is clearly a citizen and resident of the United States, as well as the state of Washington, and is therefore *not* a nonresident alien.

In support of his argument that the laws of the United States, including the I.R.C., do not apply to citizens and residents of the so-called "compact states of America," plaintiff cites *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), President Reagan's Executive Order Number 12612, 3 C.F.R. 252 (1988), *reprinted in* 5 U.S.C. § 601 (1988), and 28 U.S.C. § 297 (1994). Plaintiff cites *Lopez* as authority for the proposition that if the federal government's jurisdiction was not limited, then it could tax "compact state individuals" on all income "at a 100 percent rate," thus denying the states any revenue. *Lopez,* however, held that regulating gun possession in "school zones" is not, as numerous other regulatory activities have been found to be, within Congress' authority under the commerce clause to regulate state and local commercial activities that substantially affect interstate commerce. *Lopez,* 514 U.S. at 567–68, 115 S.Ct. at 1633–34. *Lopez* has no relevance to plaintiff's case, however, as Con-

ington's history, including the date of its admis- sion to the Union, November 11, 1889.

gress is given explicit constitutional authority to impose and collect taxes. Therefore, *Lopez* in no way supports plaintiff's position that the federal government cannot tax state citizens.

Plaintiff's reliance on Executive Order Number 12612, entitled "Federalism," is also misplaced. *See* 3 C.F.R. § 252 (1988). The order is simply a directive to the federal executive agencies directing them to leave as much authority to the states as constitutionally permitted. *Id.* Section 8 of the order specifically states that "[t]his Order is intended only to improve the internal management of the Executive branch, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person." *Id.* at 256. Thus, the order in no way supports plaintiff's argument that federal law is inapplicable to citizens of "compact states."

Plaintiff also cites 28 U.S.C. § 297, which allows for the assignment of any circuit or district judge from the Ninth Circuit to serve temporarily as a judge of a court of the "freely associated compact states," and the reimbursement of the judge for expenses arising from such service from the "countries" involved, in support of his argument that he is citizen of a "compact state" and not the United States. 28 U.S.C. § 297. Plaintiff contends that the statute's terms "compact states" and "countries" describe the state of Washington, and places it outside of the jurisdiction of the laws of the United States. *See id.* The legislative history of the statute, however, reveals that Congress used the term "compact states" and "countries" in 28 U.S.C. § 297 to refer exclusively to the former Trust Territories of the Pacific Islands, namely, the Federal States of Micronesia, the Marshall Islands, and the Republic of Palau, and not the 50 states comprising the United States.[10] *See* 134 Cong.

Rec. at 31,066 (1988). Thus, 28 U.S.C. § 297 bears no relevance to plaintiff's claim.

### C. Plaintiff is Not Entitled to a Tax Refund

As a United States citizen, plaintiff is required to pay federal income tax. Section 1(c) of the I.R.C. provides that a tax shall be "imposed on the taxable income of every individual...." 26 U.S.C. § 1(c) (1994). Section 63 defines "taxable income" as "gross income minus the deductions allowed by this chapter...." 26 U.S.C. § 63 (1994). Section 61(a)(1) defines "gross income" as "all income from whatever source derived, including (but not limited to) ... [c]ompensation for services." 26 U.S.C. § 61(a)(1) (1994). Both plaintiff's wages from Betz Farms, as compensation for services, and his gambling earnings, constitute taxable income under the I.R.C. *See Ficalora v. Comm'r of IRS*, 751 F.2d 85, 88 (2d Cir.1984) (finding that wages are taxable income); *see also Campodonico v. United States*, 222 F.2d 310, 314 (9th Cir.1955) (finding that gambling winnings are taxable income). As plaintiff is not a "nonresident alien," but is a United States citizen, he is therefore not entitled to a tax refund.

Plaintiff appears to argue that according to the Sixteenth Amendment, federal income tax is not a direct tax on wages or salaries of individuals, but that it is an excise tax on the privilege of engaging in some privileged or regulated activity. Therefore, according to plaintiff, this "indirect excise tax" can only be imposed on the income of corporations and the dividend income of stockholders. Despite plaintiff's many case citations allegedly supporting his argument, the Sixteenth Amendment, valid as described above, clearly authorizes Congress to levy a direct income tax upon individuals who are United States citizens. In addition, as described above, plaintiff's wages and gambling earnings are

---

**10.** The motivation for this statute was that:

[t]hese three compact states do not have enough full-time judges to staff their entire court structure. In order to permit Ninth Circuit judges to sit by designation on such courts, as was done when the islands were administered by the United States under the trust territories government, the Judicial Con-

ference at the March 1987 meeting endorsed enactment of legislation by the Congress which permit the Chief Justice or the chief judge of the Ninth Circuit to assign judges of the Ninth Circuit to serve on the courts of Micronesia, the Marshall Islands, and Palau.... This section implements this recommendation.

134 Cong. Rec. 31,066 (1988).

clearly within the I.R.C.'s definition of "income," and are properly subject to taxation.

### D. Claim for Costs and Fees

Finally, plaintiff requests costs and fees under 26 U.S.C.A. § 7430, which provides that the prevailing party in a suit "brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title," may be awarded costs and certain fees. 26 U.S.C.A. § 7430(a). Because the United States, and not plaintiff, has prevailed in this action, plaintiff's request for costs and/or fees is moot.

The court has considered all of plaintiff's many arguments and exhaustive case and statute citations in support of his claim that he is not subject to federal income taxation. Despite plaintiff's efforts, however, it is clear that he is an individual subject to the laws of the United States and the state of Washington, and therefore must pay federal (and state) income taxes. Plaintiff's arguments, similar to many other tax protester's arguments rejected by courts in the past, are legally meritless, and borderline frivolous. Defendant, and not plaintiff, has met its burden of showing entitlement to judgment as a matter of law, and plaintiff has not provided any facts establishing that a genuine issue for trial exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). As a result of the foregoing, defendant's motion for summary judgment on plaintiff's tax refund claim is allowed, and plaintiff's motion for summary judgment is denied.

### CONCLUSION

Based upon the foregoing discussion, defendant's motion to dismiss, in part, and for summary judgment, is allowed and plaintiff's motion for summary judgment is denied. The clerk shall enter judgment accordingly. No costs.

**IT IS SO ORDERED.**