James Allen GREGOLINE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 10–690T.

United States Court of Federal Claims.

May 11, 2011.

James Allen Gregoline, Los Angeles, CA, appearing pro se.

Paul G. Galindo, with whom were John A. DiCicco, Acting Assistant Attorney General, Steven I. Frahm, Chief, Court of Federal Claims Section, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

WHEELER, Judge.

Before the Court is Defendant's February 3, 2011 motion to dismiss for lack of subject matter jurisdiction, or alternatively, for failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and

12(b)(6) of this Court. Plaintiff, James Allen Gregoline, can best be described as a tax protester. Despite his six-figure annual salary from Twentieth Century Fox Film, he claims that he is not required to pay any taxes for the years 2006 through 2009. This position inevitably has led Mr. Gregoline to conflicts with the Internal Revenue Service (IRS), and with his state taxing authority, the California Franchise Tax Board. Mr. Gregoline petitions this Court for a refund of all amounts withheld from his income by the IRS and the California Franchise Tax Board. He also requests other monetary and equitable relief resulting from his disputes with these entities.

For the reasons stated below, the Court finds that it does not have subject matter jurisdiction over any of Mr. Gregoline's claims. For this Court to have jurisdiction over a tax refund claim, a plaintiff must first file a valid administrative claim with the IRS. While an individual tax return can serve as a valid claim, the return must be properly completed and executed. Mr. Gregoline's tax returns, which have zeros throughout where dollar amounts should appear, do not constitute valid refund claims. Mr. Gregoline's claims also suffer from other flaws. Some of his claims are not against the United States, seek equitable relief not available in this Court, or request a remedy only available in a district court. For these reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is DISMISSED without prejudice.

### Background [1]

Mr. Gregoline is a resident of California. (Compl. ¶ 2.) During the years 2006–2009, he was employed by Twentieth Century Fox Film, earning more than $100,000 annually. (Pl.'s Resp. Mot. Dismiss Ex. A4.) Mr. Gregoline claims that he is not required to pay taxes on the income he received from his employer. (Compl. ¶ 8.) He seeks from this Court a refund of all amounts withheld from his income by the IRS and the California Franchise Tax Board for the years 2006–2009. He also requests amounts allegedly levied by the IRS and the California Franchise Tax Board in their attempts to collect unpaid taxes, and he requests equitable relief related thereto. Specifically, Mr. Gregoline asks the Court for the following: (1) a refund of $78,952 in federal and state income taxes allegedly overpaid; (2) money damages of $290 for an unauthorized bank levy by the IRS; (3) withdrawal of a notice of federal tax lien related to civil penalties assessed in connection with Plaintiff's 2008 tax year; (4) a refund of a $3,500 wage levy by the California Franchise Tax Board; and (5) a reinstatement of Plaintiff's exempt withholding status with his employer. (Compl. Request for Relief.) Mr. Gregoline also requests interest, costs and other relief as the Court may deem appropriate. *Id.* In addition to these specific claims for relief, Mr. Gregoline alleges more generally that Defendant is wrongfully interfering with his constitutional right to the possessory interest of property belonging to him, (Compl. ¶ 19), and that Defendant's actions are causing him extreme mental suffering and economic hardship. (Compl. ¶ 20.)

To support his refund claim, Mr. Gregoline attached to his complaint tax returns for 2009 and amended tax returns for 2006–2008 sent to the IRS and the California Franchise Tax Board. (Compl. ¶ 5, Ex. A.) Through the returns and amended returns, Mr. Gregoline requested a total of $78,951 in refunds from the tax authorities, $66,079 from the IRS and $12,872 from the California Franchise Tax Board.[2] For the federal taxes, the amount Mr. Gregoline requests is approximately the amount that was withheld from

---

1. The facts described in this Opinion do not constitute findings of fact by the Court. The facts cited herein are either undisputed or alleged and assumed to be true for the purposes of the pending motion. Defendant provided additional factual information in its motion to dismiss. Defendant also attached to its motion as Appendix B a declaration by a Department of Justice attorney, Michael J. Roney ("Roney Decl."), which included 18 exhibits providing additional factual background in this case. For the purposes of this Opinion, the Court will assume that all the facts provided by Plaintiff in his complaint are true.

2. The one dollar difference between the amount requested in the complaint and the amount requested through the return and amended returns is attributable to rounding.

his income in 2006–2009. For the state taxes, his claim is for the amount withheld plus an additional $1,281 that Mr. Gregoline reported in his 2006 amended return as having been paid with the original tax or after the return was filed in 2006. (Compl. Ex. A.)

All of the amended tax returns attached to the complaint were filed in March 2010. Defendant explained in its motion to dismiss that Plaintiff actually filed numerous amended returns for the years in question that are not included with the complaint, both before and after the returns submitted with the complaint. (Def.'s Mot. Dismiss 6 n. 6, Roney Decl. Ex. 5, 12, 14, 16, 17, 18.) For the purpose of this Opinion, the Court will rely on the documents provided with the complaint, and with Plaintiff's response to Defendant's motion to dismiss. Mr. Gregoline attached the following: [3]

- For 2006, Mr. Gregoline attached an amended Form 1040X in which he reported zero for adjusted gross income and sought a refund of $8,987 in estimated tax payments. (Compl. Ex. A.) This amount, $8,987, is the amount shown on his Form W–2 as being withheld for Federal Income Tax, Social Security Tax, and Medicare Tax. (Pl.'s Resp. Mot. Dismiss Ex. A4.) Mr. Gregoline did not attach the W–2 to his Form 1040X, but instead attached a Form 4852, Substitute for Form W–2, in which he did not report any wages. *Id.* He also attached a California Form 540X that reported zeros for state wages and federal adjusted gross income, and sought a refund of $1,788. *Id.*

- For 2007, Mr. Gregoline attached an amended Form 1040X in which he reported zero for adjusted gross income and sought a refund of $7,617, the amount withheld from his Form W–2 as estimated tax payments. (Compl. Ex. A; Pl.'s Resp. Mot. Dismiss Ex. A4.) Instead of attaching his W–2, he attached a Form 4852 in which he did not report any wages. (Compl. Ex. A.)

- For 2008, Mr. Gregoline attached an amended Form 1040X in which he reported zero for his adjusted gross income and sought a refund of $16,680, the amount withheld from his Form W–2 as estimated tax payments. (Compl. Ex. A; Pl.'s Resp. Mot. Dismiss Ex. A4.) Instead of attaching his W–2, he attached a Form 4852 in which he did not report any wages. (Compl. Ex. A.) He also filed a Form 540X for California in which he requested a refund of $2,754. *Id.*

- For 2009, Mr. Gregoline attached a Form 1040, reporting zero in every space for wages or income, and requesting a refund of $32,795, the amount withheld from his Form W–2 as estimated tax payments. (Compl. Ex. A; Pl.'s Resp. Mot. Dismiss Ex. A4.) Instead of attaching a W–2, he attached a Form 4852 in which he did not report any wages. (Compl. Ex. A.) He also filed a California Form 540, reporting zero for state and federal wages, and requesting a refund of $8,330. *Id.*

Mr. Gregoline's remaining claims stem from IRS and California Franchise Tax Board attempts to collect unpaid taxes from him. At some point prior to 2008, Mr. Gregoline claimed on his Form W–4 that he was exempt from federal income tax withholding requirements. (Compl. ¶ 10, Ex. Y.) By letter dated June 19, 2008, the IRS instructed Plaintiff's employer, Twentieth Century Fox Film, to disregard the information on Plaintiff's Form W–4, and instead to withhold income tax based on a marital status of single and a zero withholding allowance. (Compl. Ex. X.) Mr. Gregoline requested his employer to terminate the tax withholdings, but the company refused. (Compl. ¶ 10, Ex. Z, A–1.) Mr. Gregoline requests the Court to reinstate his exempt status.

By letter dated November 12, 2009, the California Franchise Tax Board also sought to collect taxes through Mr. Gregoline's employer. The Board sent an "Earnings Withholding Order for Taxes" to the employer to collect a delinquent tax debt of $3,580.77.

---

**3.** Mr. Gregoline also attached copies of Form 843, Claim for Refund or Request for Abatement, but the amounts requested in these forms are not part of the $78,952 Mr. Gregoline requests in the complaint. (Compl. Ex. A.)

(Compl. ¶ 12, Ex. W.) Mr. Gregoline requested his employer to stop garnishing his wages, but his employer refused. (Compl. Ex. A–1.) Mr. Gregoline seeks a refund of $3,500 for the wage levy imposed by the California Franchise Tax Board.

In November 2009, Mr. Gregoline began receiving notices from the IRS stating that it intended to levy his state tax returns, that it may look for other sources to levy, and that it may file a Notice of Federal Tax Lien in order to collect unpaid taxes. (Compl. Ex. H.) In response, Mr. Gregoline filed a Form 911, a Request for Taxpayer Advocate Assistance. *Id.* Mr. Gregoline received a letter from the Taxpayer Advocate Service on December 1, 2009 stating that no levy action would be taken until the case was closed in the taxpayer advocate office. (Compl. ¶ 13, Ex. I.) On January 7, 2010, the IRS recorded a federal tax lien against Mr Gregoline in the amount of $5,000. (Compl. ¶ 13, Ex. J.) Mr. Gregoline alleges that he never received a notice from the IRS regarding the tax lien. (Compl. ¶ 13.) He only realized that there was a lien one year later when he checked his credit report, and only received a copy of the lien though a Freedom of Information Act request. *Id.* Mr. Gregoline applied to the IRS for a withdrawal of the lien but this request was rejected. (Compl. ¶ 13, Ex. M.) The Government explained that the lien relates to civil penalties assessed against Mr. Gregoline on August 24, 2009 for filing a frivolous tax return in the 2008 tax year. (Def.'s Mot. Dismiss 9, Roney Decl. 6.) The Government states that notice of the lien was sent to Mr. Gregoline's last known address by certified mail on January 5, 2010, but that the notice went unclaimed and was returned to the IRS on February 2, 2010. (Def.'s Mot. Dismiss 9, Roney Decl. Ex. 7, 8.) Mr. Gregoline requests a withdrawal of the tax lien.

On August 16, 2010, the IRS issued a Notice of Levy to Mr. Gregoline for a total amount due of $40,546.24. (Compl. ¶ 16, Ex N.) The Government explains that the assessment is the result of eight frivolous submission penalties against Mr. Gregoline for the 2008 tax year as a result of his zero income tax return and seven amended income tax returns. (Def.'s Mot. Dismiss 9–10,

Roney Decl. 6.) Mr. Gregoline alleges that the IRS levied $290 from his bank account. (Compl. ¶ 16.) Defendant states that the IRS's records do not show an actual levy, (Def.'s Mot. Dismiss 10, Roney Decl. Ex. 6), although for the purpose of this Opinion the Court will assume that Plaintiff is correct. Mr. Gregoline asks the Court to award him $290 for an alleged illegal levy of his account.

On October 12, 2010, Mr. Gregoline filed his complaint in this Court. On February 3, 2011, Defendant filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted. Mr. Gregoline filed a response on February 10, 2011, and Defendant filed a reply on February 17, 2011. Mr. Gregoline filed a sur-reply on March 30, 2011. Although the Court had not granted Mr. Gregoline leave to file the sur-reply, the Court nevertheless accepted the filing.

Also pending before the Court are various ancillary motions, including Mr. Gregoline's motions for default judgment due to Defendant's alleged failure to file a timely answer, and Mr. Gregoline's motion for summary judgment. By order dated March 24, 2011, the Court stayed further briefing on the motion for summary judgment until Defendant's jurisdictional motion was decided. In light of the Court's ruling that it lacks subject matter jurisdiction, these other pending motions are dismissed as moot. The Court deemed oral argument unnecessary.

### Standards for Review

■ Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) (citing *Zunamon v. Brown,* 418 F.2d 883, 886 (8th Cir.1969)). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true any facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). If, however, a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the Court may consider relevant evidence in order to resolve the factual dispute. *Reynolds,*

846 F.2d at 747 (citing *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). The Court holds the pleadings of pro se plaintiffs to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, the leniency afforded to pro se litigants does not relieve them of meeting the Court's jurisdictional requirements. *Sumner v. United States*, 71 Fed.Cl. 627, 628 (2006). If the Court finds that it lacks subject matter jurisdiction, it must dismiss the claim. *Gluck v. United States*, 84 Fed.Cl. 609, 614 (2008).

### Discussion

■ The Court of Federal Claims is a court of limited jurisdiction. *Gluck*, 84 Fed.Cl. at 612 (citing *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed.Cir.2006)). This Court derives its jurisdiction from the Tucker Act, which confers jurisdiction upon the Court of Federal Claims over specified categories of actions and waives the Government's sovereign immunity for those actions. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005). The Tucker Act provides that the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2006). "The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172 (citing *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) and *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). In the parlance of Tucker Act cases, the source must be "money-mandating." *Id.* (citing *Mitchell*, 463 U.S.

at 217, 103 S.Ct. 2961 and *Testan*, 424 U.S. at 398, 96 S.Ct. 948).

26 U.S.C. § 7422(a) provides the money-mandating source for bringing a tax refund claim in this Court. *Dumont v. United States*, 85 Fed.Cl. 425, 427–28 (2009). This provision grants the taxpayer the right to sue the United States for the recovery of any internal revenue tax erroneously or illegally assessed or collected, provided that the taxpayer first duly files a claim for a refund with the IRS. 26 U.S.C. § 7422(a) (2006); *Dumont*, 85 Fed.Cl. at 427–28; *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008).

■ A properly executed individual tax return or amended tax return can constitute a refund claim with the IRS. 26 C.F.R. § 301.6402–3(a)(5); *Hamzik v. United States*, 64 Fed.Cl. 766, 767 (2005). However, "a return which lacks essential financial information and, in particular, contains no recitation of the taxpayer's income, is not a properly executed return for the purposes of the tax laws." *Id.; see also, e.g., United States v. Mosel*, 738 F.2d 157, 158 (6th Cir.1984) (holding that a return which had no information upon which a tax could be calculated "might reasonably be considered a protest, but under no circumstances can it be rationally construed as a return"); *United States v. Moore*, 627 F.2d 830, 835 (7th Cir.1980) (finding that for an adequate tax return there must be an "honest and reasonable intent to supply the information required by the tax code").[4]

■ Tax returns that are filled out only with zeros do not contain sufficient financial information to be considered properly executed tax returns and cannot serve as a claim for a refund with the IRS. *See, e.g., Waltner v. United States*, 98 Fed.Cl. 737, 760–61 (2011) (holding that the returns in which plaintiffs allege that no wages were received did not provide the IRS with sufficient information for the IRS to calculate tax liability and therefore were not proper claims for a

---

4. The Court is aware of one case from the Ninth Circuit which held that a tax return listing zeros in the spaces for exemptions, income, income tax, and tax withheld was still a tax return.

*United States v. Long*, 618 F.2d 74, 76 (9th Cir. 1980). However, this position has been overwhelmingly rejected by courts outside the Ninth Circuit. *Hamzik*, 64 Fed.Cl. at 768 n. 4.

refund); *Kehmeier v. United States*, 95 Fed. Cl. 442, 445 (2010) (holding that this Court lacks jurisdiction over a plaintiff's refund claim because the plaintiff's zero tax return did not contain information sufficient to constitute a valid tax return); *Hamzik*, 64 Fed. Cl. at 768 (holding that plaintiff's tax return, which was replete with zeros, could not form the basis of a refund claim); *Ulloa v. United States*, No 1:06–CV–445 (NAM/RFT), 2008 WL 4186328, at *6 (N.D.N.Y. Sept. 9, 2008) (plaintiff did not have a valid refund claim when the tax return reported zero income and wages even though the plaintiff earned more than $100,000); *Deyo v. Internal Revenue Service*, No. Civ. 3:02CV 85(AVC), 2004 WL 2051217, at *3–4 (D.Conn. Aug. 2, 2004) (holding that tax return reporting zeros instead of income was not a valid tax return and could not serve as the jurisdictional prerequisite for a tax refund claim), *aff'd*, 134 Fed.Appx. 475 (2d Cir.2005); *Taylor v. United States*, No. Civ. 00–823(TPJ), 2001 WL 721850, at *1–2 (D.D.C. Mar. 5, 2001) (holding that a return containing only zeros was not a valid income tax return and therefore the plaintiff did not have a valid refund claim); *Maruska v. United States*, 77 F.Supp.2d 1035, 1039 (D.Minn.1999) (finding that a claim replete with zeros in response to all inquiries "was a nullity and, with no properly executed tax return filed, [plaintiff's] ostensible refund claim is rendered inoperative as well").

██ Mr. Gregoline's tax returns fit squarely within the above authorities. His improperly executed tax returns cannot form the jurisdictional basis for a tax refund claim. The forms lacked essential financial information. On his Form 1040 for the year 2009, Mr. Gregoline reported a zero in every space on the form to show income. Similarly, the Forms 1040X provided for the years 2006–2008 had zeros for adjusted gross income. By submitting these invalid tax returns, Mr. Gregoline has not fulfilled the requirement of 26 U.S.C. § 7422(a). The Court therefore must dismiss Mr. Gregoline's tax refund claim for lack of subject matter jurisdiction.

██ Similarly, this Court does not have jurisdiction over any of Mr. Gregoline's other claims. Of the $78,952 that Mr. Gregoline requests as a refund, $12,872 is a refund requested from the California Franchise Tax Board. Mr. Gregoline also requests a refund of $3,500 on a wage levy on his income by the same California Board. The Court cannot review Mr. Gregoline's claims against the California Franchise Tax Board because this Court's jurisdiction is limited to claims for monetary recovery against the United States. *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court [of claims].").

██ Plaintiff's request for $290 for an unauthorized bank levy pursuant to 26 U.S.C. § 7433 is barred by the terms of § 7433. That statute allows a taxpayer to bring suit if an officer or employee of the Internal Revenue Service recklessly, intentionally, or negligently disregards any provision of the Internal Revenue Code or regulation in connection with the collection of a Federal Tax. 26 U.S.C. § 7433 (2006). However, § 7433 also states that claims for damages under this statute may be brought in a district court of the United States and that this is the exclusive remedy for actions brought under the statute. *Id.* The Court of Federal Claims is not a district court of the United States, and therefore this Court lacks subject matter jurisdiction over claims brought under § 7433. *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002).

██ The Court also does not have jurisdiction of Mr. Gregoline's claims for a withdrawal of the tax lien or a reinstatement of his exempt withholding status because neither of these claims is based upon a substantive source of law creating a right to money damages. *Fisher*, 402 F.3d at 1172. Furthermore, reviewing these claims would violate the Anti–Injunction Act, which prevents the Court from ordering restraints on the assessment or collection of any tax. 26 U.S.C. § 7421(a) (2006);[5] *Ledford*, 297 F.3d at 1381;

---

5. There are several statutory exceptions to the Anti–Injunction Act, but none of them apply to this case.

*Jacobs v. United States*, No. 09–146T, 2010 WL 2594320, at \*9 (Fed.Cl. June 23, 2010). Both the federal tax lien and the IRS's letter directing Twentieth Century Fox Film to change Mr. Gregoline's exemption status were collection efforts by the IRS. *See Betz v. United States*, 40 Fed.Cl. 286, 291 (1998) (denying the plaintiff's request that the Court remove a lien as a violation of the Anti–Injunction Act); *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 770 (9th Cir. 1986) (dismissing as barred by Anti–Injunction Act challenge to IRS's instruction to employer to ignore plaintiff's Form W–4 and withhold federal income tax).

 In addition to specific claims for relief, Mr. Gregoline states that Defendant is interfering with his constitutional right to the possessory interest in property belonging to him. He also accuses the Government of deliberate and malicious interference with his property rights. Mr. Gregoline does not provide a source of substantive law for these claims that is money-mandating. Considering that Mr. Gregoline is appearing *pro se,* the Court may "strain[ ] our proper role in adversary proceedings to the limit, searching the record to see if plaintiff has a cause of action somewhere displayed." *Saladino v. United States*, 62 Fed.Cl. 782, 787 (2004) (quoting *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct.Cl.1969)). It appears that Mr. Gregoline may be attempting to plead a Fifth Amendment takings claim. However, he does not have a takings claim under the Fifth Amendment because "the lawful exercise of the Government's tax collection powers does not amount to a taking." *Fry v. United States*, 72 Fed.Cl. 500, 509 (2006); *see also Skillo v. United States*, 68 Fed.Cl. 734, 743 (2005) (holding that the collection of taxes does not amount to a prohibited Fifth Amendment taking).

### Conclusion

The Court does not have subject matter jurisdiction over any of Mr. Gregoline's claims. Therefore, Defendant's motion to dismiss under Rule 12(b)(1) is GRANTED, and the clerk is instructed to DISMISS the complaint without prejudice. Mr. Gregoline's motions for default judgment and motion for summary judgment are DISMISSED as moot. Because the Court has determined that it must dismiss the case pursuant to Rule 12(b)(1), it does not need to address Defendant's alternative ground for dismissal under Rule 12(b)(6).

IT IS SO ORDERED.