Corrected: October 10, 2007

# United States Court of Appeals for the Federal Circuit

2007-1127


ACCEPTANCE INSURANCE COMPANIES INC.,

Plaintiff-Appellant,

v.


UNITED STATES,

Defendant-Appellee.


Lewis S. Wiener, Sutherland Asbill & Brennan, LLP, of Washington, DC, argued for plaintiff-appellant. Of counsel on the brief were Ronald R. Massumi and Carter Lee Williams, of Washington, DC, and Patrick B. Griffin, Kutak Rock, LLP, of Omaha, Nebraska.

Michael N. O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from: United States District Court for the District of Nebraska.

Judge Laurie Smith Camp

# United States Court of Appeals for the Federal Circuit

2007-1127

ACCEPTANCE INSURANCE COMPANIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: October 2, 2007

_____

Before RADER and SCHALL, <u>Circuit Judges</u>, and FARNAN, District Judge.[*]

SCHALL, <u>Circuit Judge</u>.

Acceptance Insurance Companies, Inc. ("Acceptance") appeals the final decision of the United States District Court for the District of Nebraska denying its motion to retransfer to the United States Court of Federal Claims its suit against the United States alleging a taking of its property in violation of the Fifth Amendment to the Constitution. <u>Acceptance Ins. Cos. v. United States</u> (<u>Acceptance III</u>), No. 8:06CV609, 2006 WL 3538946 (D. Neb. Dec. 7, 2006). The district court denied the motion after concluding that the action of the Court of Federal Claims transferring Acceptance's suit to it was

---

[*]  Honorable Joseph J. Farnan, Jr., District Judge, United States District Court for the District of Delaware, sitting by designation.

plausible and therefore not clearly erroneous. The Court of Federal Claims transferred the suit after determining that the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 1501 et. seq, as amended in 1980, Pub. L. No. 96-365, 94 Stat. 1312 (1980), divested it of jurisdiction over the suit and placed exclusive jurisdiction over the suit in district court. Acceptance Ins. Cos. v. United States (Acceptance II), 72 Fed. Cl. 299 (2006).

Because we hold that the FCIA did not divest the Court of Federal Claims of jurisdiction over Acceptance's Fifth Amendment takings claim, we reverse the order of the district court denying Acceptance's motion to retransfer. The case is remanded to the district court, which is instructed to transfer the case back to the Court of Federal Claims for adjudication of Acceptance's takings claim.

BACKGROUND

I.

The pertinent facts are either undisputed or are drawn from Acceptance's complaint.[1] At the time of the events giving rise to this suit, Acceptance was a publicly-traded insurance holding company. It held three wholly-owned subsidiaries, American Growers Insurance Company ("American Growers"); Acceptance Insurance Company; and American Agrisurance, Inc., through which it engaged in the crop insurance and property and casualty insurance businesses. American Growers, the first of these subsidiaries, was in the business of underwriting insurance policies within the federal crop insurance program.

---

[1] While the government does not necessarily agree with the facts as alleged by Acceptance, as discussed more fully in Discussion Part II below, our jurisdictional analysis is based on the well-pleaded allegations in the complaint. See Fisher v. United States, 402 F.3d 1167, 1175 (Fed. Cir. 2005).

The Federal Crop Insurance Corporation ("FCIC") is a wholly owned government corporation within the Department of Agriculture, established by Congress in 1938 to regulate the crop insurance industry.  7 U.S.C. § 1503.  Under the FCIA, Congress directed that crop insurance be offered through private insurance providers and be reinsured (and regulated) by the FCIC.  The FCIC offers Standard Reinsurance Agreements ("SRAs") to eligible private insurance companies.  Under SRAs, the FCIC reinsures policies that private insurance companies issue to producers of agricultural commodities.  7 C.F.R. § 400.164.  The Risk Management Agency ("RMA") is an agency within the Department of Agriculture whose purpose is to supervise the FCIC and to administer all programs authorized pursuant to the FCIA.  7 U.S.C. § 6933(a), (b)(1)-(2).[2]  Pursuant to 7 U.S.C. § 1506(d), the FCIA provides for jurisdiction in the United States district courts for suits brought by or against the FCIC.  Section 1506(d) states in pertinent part that "[t]he district courts of the United States . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the [FCIC]."[3]

---

[2]     The Court of Federal Claims noted that, "[i]n reality, the RMA has stood in the shoes of the FCIC since the RMA's creation in 1996."  Acceptance II, 72 Fed. Cl. at 305.  Accordingly, for purposes of its analysis, the court lumped the RMA and the FCIC together.  Id.  As far as this appeal is concerned, neither Acceptance nor the government has questioned that approach.

[3]     7 U.S.C. § 1506(d) states in full:

The Corporation, subject to the provisions of section 1508(j) of this title, may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property. The district courts of the United States, including the district courts of the District of Columbia and of any territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation. The Corporation may intervene in any court in any suit,

On November 18, 2002, Acceptance entered into a non-binding letter of intent with Rain and Hail, LLC ("Rain and Hail"), a limited liability company also in the crop insurance business and also regulated by the FCIC. The letter of intent detailed the terms of a proposed sale to Rain and Hail of certain of Acceptance's crop insurance assets for not less than $21.5 million. Acceptance alleges that, while structured as a sale of assets, the proposed transaction, in fact, was to be a sale by Acceptance of American Growers. According to Acceptance, because the insurance assets to be purchased by Rain and Hail were reinsured by the FCIC and were subject to the FCIC's general oversight authority over the crop insurance industry, the proposed transaction between Acceptance and Rain and Hail was subject to approval by the RMA. Compl. ¶ 13. Acceptance contends that the RMA rejected the proposed sale, finding it "detrimental" to the interests of farmers and taxpayers, and that, as a result, Rain and Hail and Acceptance did not complete the sale. Compl. ¶ 15-16. Subsequently, on November 22, 2002, the RMA ordered American Growers to cease and desist from the marketing and selling of any new insurance contracts under its SRAs with the FCIC. It also advised American Growers that the FCIC would not reinsure for it any new insurance contracts. Following the collapse of the proposed sale of assets to Rain and Hail, and in view of Acceptance's precarious financial position, the Nebraska Department of Insurance placed American Growers' business under supervision, and

---

action, or proceeding in which it has an interest. Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.

"The term 'Corporation' means the Federal Crop Insurance Corporation established under section 1503 of this title." 7 U.S.C. § 1502(b)(4).

ultimately into liquidation. Acceptance contends that this allowed the RMA to take control of American Growers' crop insurance assets, and to ultimately distribute those assets among several RMA-accredited crop insurance companies. In short, Acceptance alleges that the RMA effectively put American Growers out of business. Compl. ¶ 18.

                                III.

Following the events described above, Acceptance filed a complaint in the Court of Federal Claims alleging that "[w]hen the RMA, acting as an agent of the United States, rejected the proposed Rain and Hail/Acceptance transaction in the 'interests of the American taxpayer,' it effected a takings of Acceptance's property, namely certain of Acceptance's assets, which were to be sold to Rain and Hail, for public use." Compl. ¶ 24. Eventually, the government brought a motion to dismiss for lack of subject matter jurisdiction, arguing, inter alia, that 7 U.S.C. § 1506(d) placed exclusive jurisdiction in federal district court over Acceptance's takings claim. The Court of Federal Claims denied the motion, holding that "this is a claim against the United States alleging a Fifth Amendment takings. The Court of Federal Claims has jurisdiction to hear and determine takings claims against the United States." Acceptance Ins. Cos. v. United States (Acceptance I), No. 03-2794C, slip op. at 2 (Fed. Cl. Aug. 3, 2004). The court reasoned that the purpose of the FCIA did not appear to be inconsistent with the Court of Federal Claims' Tucker Act jurisdiction to hear takings claims against the United States. Id. Thus, the court stated, "[a]s the two statutes are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" Id. (quoting Blanchette v. Conn. Gen. Ins.

<u>Corps.</u>, 419 U.S. 102, 133-34 (1974)).

Subsequently, the case was transferred to a different judge within the Court of Federal Claims. In addition, this court issued its opinion in <u>Texas Peanut Farmers v. United States</u>, 409 F.3d 1370 (Fed. Cir. 2005). In <u>Texas Peanut Farmers</u>, we held that because the true nature of the plaintiffs-appellants' breach of contract action against the United States was a breach of contract action against the FCIC, section 1506(d)'s grant of exclusive jurisdiction to the district courts over suits against the FCIC meant that the case had to be transferred from the Court of Federal Claims to a district court. In due course, the government renewed its motion to dismiss Acceptance's suit for lack of subject matter jurisdiction in light of <u>Texas Peanut Farmers</u>. This time, the Court of Federal Claims granted the motion. In doing so, the court held that the mandatory language of section 1506(d) left no room for concurrent Court of Federal Claims Tucker Act jurisdiction over Acceptance's suit and that exclusive jurisdiction lay in federal district court. <u>Acceptance II</u>, 72 Fed. Cl. at 303. The court read <u>Texas Peanut Farmers</u> to support its reading of section 1506(d) as divesting the Court of Federal Claims of jurisdiction over all suits involving the FCIC, including suits involving takings claims. Following its decision, the court transferred Acceptance's suit to the District of Nebraska. <u>Id.</u> at 303-04.

Following the transfer, Acceptance filed a motion to retransfer the case to the Court of Federal Claims under 28 U.S.C. § 1631. The district court denied the motion in <u>Acceptance III</u>. In its decision, the court reiterated the reasoning of the Court of Federal Claims and concluded that because the previous transfer decision was plausible, and therefore not clearly erroneous, its jurisdictional inquiry was at an end. <u>Acceptance III</u>,

2006 WL 35389468 at *2-4.  Acceptance has timely appealed the district court's denial of its motion to retransfer.

DISCUSSION

I.

Pursuant to 28 U.S.C. § 1292(d)(4)(A), we have jurisdiction over an appeal from an interlocutory order of a district court denying a motion to transfer an action to the Court of Federal Claims under 28 U.S.C. § 1631.  Our review of the district court's decision granting or denying transfer of an action to the Court of Federal Claims is de novo because the district court's underlying determination is one of jurisdiction.  See Awad v. United States, 301 F.3d 1367, 1371 (Fed. Cir. 2002).  The transfer statute provides as follows:

> Whenever a civil action is filed in a court as defined in section 610 of this title[4] or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  Thus, to successfully employ section 1631 to have a case transferred, a movant must show, inter alia, (i) that the transferor court lacks jurisdiction and (ii) that the transferee court has jurisdiction.  See also Fisherman's Harvest, Inc. v. PBS & J, 490 F.3d 1371, 1374 (Fed. Cir. 2007) ("[Section 1631] requires the transferor

---

[4]    The Court of Federal Claims and the district courts are courts "as defined in section 610 of this title."  See 28 U.S.C. § 610 ("As used in this chapter the word 'courts' includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." (emphases added)).

court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction.").

28 U.S.C. § 1506(d) states in pertinent part that "[t]he district courts of the United States . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation." In <u>Acceptance II</u>, the Court of Federal Claims read "[t]his mandatory language" as leaving "no opening for concurrent jurisdiction with the Tucker Act. The words 'exclusive' and 'concurrent' are antonyms, and the Court finds no ambiguity in their meaning." <u>Acceptance II</u>, 72 Fed. Cl. at 303. Further, the court believed that its reading of section 1506(d) was supported by <u>Texas Peanut Farmers</u>. There, the plaintiffs-appellants sought to avoid the jurisdiction of the district court over their breach of contract claim against the FCIC by naming the United States, the RMA and its Secretary, and the Department of Agriculture and its Secretary, as the defendants and filing suit in the Court of Federal Claims instead of in district court. We concurred with the Court of Federal Claims' holding that section 1506(d) placed exclusive jurisdiction over plaintiffs-appellants' breach of contract claim in the district court, stating:

> [Plaintiff-Appellants] argue that: (1) their contracts with the government provide for lawsuits to be filed in federal district court but do not prohibit filing in the Court of Federal Claims; (2) the Tucker Act provides jurisdiction in the Court of Federal Claims over their contract claim against the United States; therefore (3) the Tucker Act allows concurrent jurisdiction. . . . Appellants' assertions are unavailing. . . . Congress may withdraw any grant of Tucker Act jurisdiction.

<u>Tex. Peanut Farmers</u>, 409 F.3d at 1373-74. In <u>Acceptance II</u>, the Court of Federal Claims reasoned that "[t]here is nothing unique to a breach of contract theory in the logic of the argument rejected by the Federal Circuit. By substituting 'takings claim' for 'contract claim' in the above passage the result is the same." <u>Acceptance II</u>, 72 Fed. Cl.

at 303. The court stated that "[n]owhere in its decision did the Federal Circuit indicate that Congress' withdrawal of Tucker Act jurisdiction applied only to contract claims. The grant of 'exclusive original jurisdiction' to the district courts in 7 U.S.C. § 1506(d) is not confined to any particular cause of action." Id. (footnote omitted). As previously noted, in denying Acceptance's motion to retransfer, the district court essentially followed the decision of the Court of Federal Claims in Acceptance II.

II.

On appeal, Acceptance argues that the Court of Federal Claims erred in transferring its suit because it has exclusive jurisdiction over the case. This is so, urges Acceptance, because its complaint alleging a Fifth Amendment taking properly sued the United States in its sovereign capacity. According to Acceptance, the FCIA vests exclusive jurisdiction in district courts over claims against the FCIC, but its claim was properly brought against the United States. Acceptance distinguishes Texas Peanut Farmers by explaining that, in that case, the plaintiffs brought suit naming the United States and others as defendants, but the true nature of the claim was for breach of contract against the FCIC. However, in this case, Acceptance argues, it has named the United States as the defendant, and the true nature of the claim is a takings claim against the United States. The government does not concede that Acceptance's claim is a takings claim, and it continues to advance parallel arguments as to why the Court of Federal Claims lacks jurisdiction and why jurisdiction properly lies in the district court pursuant to 7 U.S.C. § 1506(d). The first argument asserted to the Court of Federal Claims, and ultimately accepted by the court, was that section 1506(d) expressly grants district courts exclusive jurisdiction over all claims against the FCIC, including takings

claims. The second argument asserted was that, while Acceptance pled its claim as a taking, the true nature of the suit was a contract action, because the specific property interest asserted was governed by the SRA between American Growers and the FCIC. Thus, according to the government, prior to bringing suit, Acceptance was required to exhaust the FCIA mandated administrative remedy of an appeal to the board of contract appeals.[5] The government argues that, for these reasons, the district court did not err in denying Acceptance's transfer motion.

---

[5] 7 U.S.C. § 6912(e) provides that

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;
(2) the Department; or
(3) an agency, office, officer, or employee of the Department.

7 C.F.R. § 400.169 provides that

(a) If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. . . .

(d) Appealable final administrative determinations of the Corporation under paragraph (a) . . . of this section may be appealed to the Civilian Board of Contract Appeals in accordance with 48 CFR part 6102.

III.

Turning first to the nature of Acceptance's suit, we note that both the Court of Federal Claims and the district court viewed Acceptance's claim as one for a compensable taking. Acceptance III, 2006 WL 3538946, at *3 ("[A]lthough Tex. Peanut Farmers concerns a breach-of-contract action, there is nothing in the FCIA that limits that act to breach-of-contract actions."); Acceptance II, 72 Fed. Cl. at 303 ("There is nothing unique to a breach of contract theory in the logic of the argument rejected by the Federal Circuit [in Texas Peanut Farmers]. By substituting 'takings claim' for 'contract claim' in the above passage, the result is the same. Nowhere in its decision did the Federal Circuit indicate that Congress' withdrawal of Tucker Act jurisdiction applied only to contract claims."); id. at 304 ("Having determined that 7 U.S.C. § 1506(d) divests the Court of jurisdiction to hear a takings claim against the FCIC," the court proceeded to examine whether that section also applies to actions of the RMA); Acceptance I, slip op. at 2 ("This claim is against the United States alleging a Fifth Amendment taking.").

A challenge to the Court of Federal Claims' jurisdiction may be overcome on the basis of well-pleaded allegations in the complaint. See Fisher v. United States, 402 F.3d 1167, 1175 (Fed. Cir. 2005) ("[Plaintiff's] well-pleaded complaint, clearly grounded on a statute that mandates compensation, gives the Court of Federal Claims subject-matter jurisdiction to address the case on the merits."); see also Total Med. Mgmt. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) ("Although the government argues that jurisdiction is lacking because there was no enforceable contract, the law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be

pleaded, not ultimately proven.").[6] This is a reflection of the "well-pleaded complaint" rule. See Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) ("Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." (internal citation omitted)); Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) (under the "well-pleaded complaint rule," whether a court has jurisdiction over a claim "must be determined from what necessarily appears in the plaintiff's statements of his own claim in the bill or declaration"); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908) (holding that "plaintiff's statement of his own cause of action" is what determines jurisdiction). On the basis of the well-pleaded allegations in Acceptance's complaint, we agree with the Court of Federal Claims and the district court that Acceptance's suit is one for a compensable regulatory taking under the Fifth Amendment.

We have stated that

[t]he Federal Circuit has developed a two-part test to evaluate claims that a governmental action constitutes a taking of private property without just compensation. First, a court must evaluate whether the claimant has established a "property interest" for purposes of the Fifth Amendment. Second, once a court has determined that a property interest exists, it must determine whether a taking occurred. . . .

A categorical taking has been defined as one in which "all economically viable use, i.e., all economic value has been taken by the regulatory imposition." A categorical taking is distinct from a taking "that is the consequence of a regulatory imposition that prohibits or restricts only some of the use that would otherwise be available to the property owner but leaves the property owner with substantial economic use." When a taking is determined to be non-categorical, the court must embark on a fact-based inquiry in which it applies the standard promulgated by the Supreme Court in [Penn Central Transportation Co. v. New York City, 438

---

[6] While the cited cases arose in the context of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, we see no reason not to apply the same standard when the Court of Federal Claims is evaluating jurisdiction in the context of a motion under 28 U.S.C. § 1631 to transfer due to lack of jurisdiction.

U.S. 104 (1978)] to evaluate whether the governmental action at issue constituted a cognizable taking of the property interest at issue. The Penn Central analysis involves "several factors that have particular significance." . . . [T]hose factors are the character of the governmental action at issue, the economic impact of the action on the claimant, and the extent to which the action has interfered with the claimant's distinct, investment-backed expectations.

Maritrans Inc. v. United States, 342 F.3d 1344, 1351-52 (Fed. Cir. 2003) (internal citations omitted). Acceptance alleges in its complaint that the fair market value of certain of its assets was not less than $21.5 million. Compl. ¶ 12. Acceptance further alleges in its complaint that (1) in rejecting the proposed Rain and Hail/Acceptance transaction, the RMA exercised its regulatory authority in the interests of the American taxpayer; (2) by rejecting the proposed transaction, the RMA rendered valueless American Growers' insurance assets; and (3) based on its history of dealing with the RMA and the RMA's approval of prior transactions, Acceptance held a reasonable investment-backed expectation that the RMA would approve the proposed transaction. Compl. ¶¶ 6-30. We leave it to future proceedings to decide whether Acceptance's claim is based upon an alleged categorical or non-categorical taking. For present purposes, it is enough to say that we have no difficulty concluding that Acceptance's complaint alleges a takings claim under the Fifth Amendment. Our jurisdictional analysis will proceed on that basis.

IV.

Under the Tucker Act, the Court of Federal Claims has exclusive original jurisdiction over "any claim against the United States founded . . . upon the Constitution" in excess of $10,000. 28 U.S.C. § 1491(a)(1); see also 28 U.S.C. § 1346(a)(2) (granting district courts concurrent jurisdiction over claims against the United States founded upon the Constitution not exceeding $10,000 in amount). A Fifth Amendment

takings claim falls within the Tucker Act's grant of jurisdiction because it is a "claim against the United States founded upon the Constitution." See, e.g., Blanchette, 419 U.S. at 126. As we recently stated in Lion Raisins, Inc. v. United States,

> [a]s originally enacted, and today, the Tucker Act provides no exception to its general waiver of the United State's [sic] sovereign immunity for claims "founded upon the Constitution." "If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." United States v. Mitchell, 463 U.S. 206, 216 (1983).

416 F.3d 1356, 1362 (Fed. Cir. 2005). The Supreme Court has stated that "a claim for just compensation under the Takings Clause must be brought in the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statutes." E. Enters. v. Apfel, 524 U.S. 498, 520 (1998). At the same time, withdrawal of Tucker Act jurisdiction by implication is disfavored, which means that a court must find that the statute at issue—in this case 7 U.S.C. § 1506(d)—reflects an unambiguous congressional intent to displace the Tucker Act's waiver of sovereign immunity. See Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) ("The critical question in this case, therefore, is whether a Tucker Act remedy is available for claims arising out of takings pursuant to the Amendments. The proper inquiry is not whether the statute 'expresses an affirmative showing of congressional intent to permit recourse to a Tucker Act remedy,' but rather 'whether Congress has in the [statute] withdrawn the Tucker Act grant of jurisdiction to the [Claims Court] to hear a suit involving the [statute] "founded . . . upon the Constitution."'" (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 126 (1974)) (alterations and emphases in original)); id. ("Under this standard, we conclude that the Amendments did not withdraw the Tucker Act remedy. Congress did not exhibit the

type of 'unambiguous intention to withdraw the Tucker Act remedy,' [Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1019 (1984),] that is necessary to preclude a Tucker Act claim."). The question thus becomes whether the FCIA reflects Congress's "unambiguous intention to withdraw the Tucker Act remedy" with respect to takings claims against the United States arising from actions of the FCIC. We hold that it does not.

As seen, the FCIA provides that "[t]he district courts of the United States . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the [FCIC]." 7 U.S.C. § 1506(d) (emphasis added). The government, as did the Court of Federal Claims, appears to focus on the language of the statute that refers to "all suits" against the FCIC and appears to interpret the language as encompassing takings claims involving actions of the FCIC. See, e.g., Acceptance Ins. Cos. v. United States, No. 03-2794C (Fed. Cl. Sept. 13, 2006) (order denying motion to certify issue for interlocutory appeal) ("The statute in question could not be any clearer that 'all suits' involving the Federal Crop Insurance Corporation must be brought in a United States District Court."). However, in our view, both the Court of Federal Claims and the government place excessive weight on the "all suits" language and fail to give equal weight to the "by or against the [FCIC]" language. The proper inquiry is whether the statutory language "all suits by or against the [FCIC]" includes a Fifth Amendment takings claim based on actions of the FCIC.

A takings claim is properly brought against the United States, not against the agent whose actions give rise to the claim. As the Supreme Court noted in Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 20-21 (1940), if the authority to carry out certain

acts was validly conferred by Congress to an agent, and if those acts are within the constitutional power of Congress, there is no liability on the part of the agent for executing its will. See also id. at 22 ("So, in the case of a taking by the Government of private property for public use such as petitioners allege here, it cannot be doubted that the remedy to obtain compensation from the Government is as comprehensive as the requirement of the Constitution, and hence it excludes liability of the Government's representatives lawfully acting on its behalf in relation to the taking."). We likewise have stated: "There is no question that the United States, in general, incurs takings liability for the acts of its agents. That is, a takings 'claim against the United States' may be based on the acts of an agent of the United States." Lion Raisins, 416 F.3d at 1362.

The government cites several cases in an attempt to show that a takings claim may be brought against an agency. See E. Enters., 524 U.S. 498; Hodel v. Irving, 481 U.S. 704 (1987); Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211 (1986); Andrus v. Allard, 444 U.S. 51 (1979). However, in each cited case the plaintiffs sought declaratory or injunctive relief rather than compensation from the government. For example, in Eastern Enterprises, the Court explained that "the Declaratory Judgment Act allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." 524 U.S. at 521 (internal citation and quotation marks omitted). In addition, the Court stated: "Based on the nature of the taking alleged in this case, we conclude that the declaratory judgment and injunction sought by petitioner constitute an appropriate remedy under the circumstances, and that it is within the district courts' power to award such equitable relief." Id. at 522. Because these cases

2007-1127                              16

involve suits outside the jurisdiction of the Court of Federal Claims, see United States v. King, 395 U.S. 1, 3 (1969) (relief the Claims Court can give is "limited to actual, presently due money damages from the United States"); Glidden Co. v. Zdanok, 370 U.S. 530, 557 (1962) ("From the beginning [the Court of Claims] has been given jurisdiction only to award damages, not specific relief."); Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998) ("Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, see 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court."), the cases cited by the government are inapposite.

As did the Court of Federal Claims, the government relies upon Texas Peanut Farmers for support. However, in Texas Peanut Farmers we determined that the proper defendant in the breach of contract action at issue was the FCIC. 409 F.3d at 1372 ("An inspection of the contract and appellants' pleadings reveals the true nature of this action: a suit against the FCIC for breach of the [contract]."). That is not the case here. The breach of contract action in Texas Peanut Farmers presented the kind of case that falls squarely within the coverage of 7 U.S.C. § 1506(d) ("The district courts of the United States . . . shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation."). This is not such a case because Acceptance's Fifth Amendment takings claim involves a suit against the United States, not a suit against the FCIC.

Finally, there is nothing in the legislative history that indicates an intent on the part of Congress to withdraw from the Court of Federal Claims jurisdiction over takings claims arising from actions of the FCIC. First, nowhere in the FCIA legislative history is there a discussion of the interaction between the FCIA and the Tucker Act. Second, the relevant language of 7 U.S.C. § 1506(d) was amended in 1980. See Pub. L. No. 96-365, § 103(2), 94 Stat. 1312 (1980). The original FCIA, passed in 1938, allowed suit to be brought by or against the FCIC in state courts. The 1980 amendment substituted the current provision, granting exclusive original jurisdiction to United States district courts, for the prior provision, granting concurrent jurisdiction to any state court of record having general jurisdiction or to any United States district court. The legislative history thus indicates that the intent behind the 1980 amendment was to divest state courts of jurisdiction over suits by or against the FCIC. The legislative history contains no indication of an "unambiguous intention to withdraw the Tucker Act remedy" in the case of takings claims against the United States arising from actions of the FCIC.

CONCLUSION

Because Acceptance's takings claim does not involve a suit against the FCIC, but rather a suit against the United States, 7 U.S.C. § 1506(d) does not divest the Court of Federal Claims of jurisdiction to hear the suit. Accordingly, because the Court of Federal Claims has exclusive jurisdiction over takings claims against the United States in excess of $10,000, the court erred when it transferred the suit to the District of Nebraska. We therefore reverse the district court's denial of Acceptance's motion to retransfer the case to the Court of Federal Claims and remand the case to the district court, with the instruction that the court transfer the suit back to the Court of Federal

Claims for adjudication of Acceptance's takings claim.[7]

<u>REVERSED</u> and <u>REMANDED</u>

---

[7]     Needless to say, we express no views on the merits of Acceptance's suit.