**Charles P. MAXWELL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–703 C.**

United States Court of Federal Claims.

March 19, 2012.

Charles P. Maxwell, Nashville, TN, pro se.

Barbara E. Thomas, with whom were Stuart Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Scott D. Austin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION and ORDER

HEWITT, Chief Judge.

Before the court are plaintiff's Complaint (Compl.), Docket Number (Dkt. No.) 1, filed October 25, 2011; Defendant's Motion to Dismiss the Plaintiff's Complaint, Dkt. No. 7, filed December 22, 2011; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Dkt. No. 9, filed January 17, 2012; defendant's Reply in Support of Defendant's Motion to Dismiss the Plaintiff's Complaint, Dkt. No. 10, filed January 25, 2012; plaintiff's Amended Complaint (Am. Compl.),[1] Dkt. No. 12, received January 17, 2012 and

---

1. Plaintiff's Amended Complaint consists of seven pages that include numbered paragraphs, an eighth page that includes some numbered paragraphs and a page number at the bottom, and a ninth page that includes only a page number at the bottom. *See generally* Am. Compl., Dkt. No. 12. The court cites to the numbered paragraph(s) or, for material not in numbered paragraphs, to the page number(s).

filed January 25, 2012 pursuant to the court's Order of January 25, 2012, Dkt. No. 11; Defendant's Motion to Dismiss Plaintiff's Amended Complaint (defendant's Amended Motion or Def.'s Am. Mot.), Dkt. No. 13, filed January 30, 2012; Plaintiff's Sur–Reply in Opposition to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss, Dkt. No. 15, received February 9, 2012 and filed February 13, 2012 pursuant to the court's Order of February 13, 2012, Dkt. No. 14; Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Pl.'s Am. Resp.), Dkt. No. 16, filed February 21, 2012; [2] and defendant's Reply in Support of Defendant's Motion to Dismiss the Plaintiff's Amended Complaint, Dkt. No. 17, filed March 8, 2012.[3]

For the following reasons, the court GRANTS defendant's Amended Motion and DISMISSES plaintiff's Amended Complaint.

## I. Background

Plaintiff owns property in Williamson County, Tennessee. *See* Am. Compl. ¶¶ 8,

26. Plaintiff alleges that the United States (defendant) "by and thru its . . . division STATE OF TENNESSEE and its divisions, agencies, instrumentalities and subdivisions," [4] *id.* ¶ 10 (footnote added); *see id.* ¶¶ 3, 36, engaged in a taking of plaintiff's property without just compensation in violation of the Fifth Amendment of the United States Constitution, *id.* ¶¶ 2, 31–32. Specifically, plaintiff claims that defendant fraudulently assessed taxes against plaintiff's property, *id.* ¶¶ 10–13, resulting in defendant's "seizing and taking of, or acquiring interest in, plaintiff's private property," *id.* ¶ 8. Although plaintiff initially claimed that defendant intended to sell plaintiff's property on October 27, 2011 "to satisfy its fraudulent claim" against plaintiff, Compl. ¶ 12, he states in his Amended Complaint that "[d]efendant then ransomed the above described property back to plaintiff by demanding and taking Federal Reserve Note property from plaintiff without compensation in the amount of $15,152 of Federal Reserve Notes," Am. Compl. ¶ 22.[5]

2. Attached to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Amended Response or Pl.'s Am. Resp.), Dkt. No. 16, are three documents, one entitled "Memorandum of the Complaint," one entitled "Memorandum of Facts" and one with the hand-written title "Exhibit A." Citations to plaintiffs Amended Response refer to the page numbers of the Amended Response unless otherwise indicated. The court will refer to the Memorandum of the Complaint as Exhibit (Ex.) 1 to plaintiff's Amended Response and to the Memorandum of Facts as Ex. 2 to plaintiff's Amended Response. The court will refer to the third document, an entry in the Central Intelligence Agency's (CIA) World Factbook, as Ex. A to plaintiff's Amended Response. The CIA World Factbook entry also appears as Ex. A to plaintiff's Amended Complaint.

3. Plaintiff also submitted an Application to Proceed In Forma Pauperis (Appl.), Dkt. No. 2, and a motion to file his In Forma Pauperis Application under seal, *see* Mot. to File Attached Aff. or Decl. in Supp. of Mot. for Leave to Proceed In Forma Pauperis Under Seal (Motion to Seal), Dkt. No. 3. Plaintiff's Application to Proceed In Forma Pauperis consists of the standard form of six questions used in the United States Court of Federal Claims. *See Application to Proceed In Forma Pauperis* (2012), *available at* http://www.uscfc.uscourts.gov/sites/default/files/court_info/informapauperis.pdf. Plaintiff does not provide detailed financial information on this two-page form but, instead, certifies that he is not present-

ly employed, has not received income within the past twelve months, does not have any cash or money in checking or savings accounts, owns a wrecked truck with a salvage value of $600, has two dependents and is not a prisoner. Appl. 1–2. Because this form does not require the disclosure of detailed financial information of the type that should be protected under seal, plaintiff's Motion to Seal is DENIED. For the limited purpose of addressing the court's jurisdiction and whether plaintiff states a claim upon which relief may be granted, the Application to Proceed in Forma Pauperis is GRANTED. The Amended Complaint, however, must be dismissed. *See infra* Part III.A–B.

4. Plaintiff claims that the following are agents of the United States: "WILLIAMSON COUNTY; AND WILLIAMSON COUNTY CHANCERY COURT, CLERK AND MASTER, CHANCELLOR, COURT OFFICER . . .; WILLIAMSON COUNTY PROPERTY TAX ASSESSOR AND TRUSTEE." Am. Comp. ¶ 10 n. 1.

5. Mr. Maxwell previously challenged the assessment of taxes against him in Tennessee state court in *State v. Jesus Christ's Church @ Liberty Church Road (Jesus Christ's Church)*, No. M2009–02439–COA–R3–CV, 2011 WL 251212 (Tenn.Ct.App. Jan. 13, 2011). In keeping with the requirements of Rule 12(h)(3) and Rule 12(b)(6), the court does not rely on the information in this related case to dismiss plaintiff's

According to plaintiff, "[t]he entity STATE OF TENNESSEE is not and does not represent or act for 'The State of Tennessee' but is de facto and foreign thereto, and as such, does not have the right of eminent domain or taxing authority." Am. Compl. ¶ 5. Plaintiff appears to claim that the entity he refers to as the "STATE OF TENNESSEE," the entity that has taxed and acquired an interest in plaintiff's property, is not a sovereign state of the United States (in other words, the "State of Tennessee") but is, instead, an "administrative agency" or administrative division of the United States. *See id.* ¶¶ 3–6, 10, 36–37. Plaintiff claims that defendant fraudulently misrepresented its administrative division to be a sovereign state of the United States. *See id.* ¶¶ 18, 20, 35; Compl. ¶ 8 (claiming that defendant "acted with the intent to deceive [plaintiff] to believe that [defendant was] the State of Tennessee to collect ad valorem land property taxes for public use"); *id.* ¶ 29 (claiming that plaintiff was "under the fraudulent pretense [defendant was] acting as the State of Tennessee under color of law"). Plaintiff maintains that defendant's administrative division does not have the authority to tax or sell plaintiff's property. Am. Compl. ¶¶ 5, 10.

Plaintiff seeks monetary damages in the amount of $15,152 (which, according to plaintiff, represents the value of the property taken by defendant, *see id.* ¶¶ 22, 40; *supra* n. 6), and an additional amount to compensate plaintiff "for the injury of emotional distress, [and] costs of defending a nonexistent suit," *id.* at 8, "punitive and exemplary damages" and "treble the above amounts for the fraud involved," *id.* at 9. Plaintiff also

requests that the court issue an order enjoining defendant from taking plaintiff's property. *Id.* at 8.

Defendant moves to dismiss plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). *See generally* Def.'s Am. Mot.

## II. Legal Standards

### A. Dismissal for Lack of Subject Matter Jurisdiction

■ Subject matter jurisdiction is a threshold matter, which the court must determine at the outset of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *PODS, Inc. v. Porta Stor, Inc.,* 484 F.3d 1359, 1365 (Fed.Cir.2007). "In deciding whether there is subject-matter jurisdiction, 'the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings.'" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) (quoting *Shearin v. United States,* 992 F.2d 1195, 1195–96 (Fed.Cir.1993)). Although complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed.Cir.2004), pro se plaintiffs must still meet jurisdictional requirements, *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004) (unpublished); *see also Kelley*

Amended Complaint but refers to the case to provide relevant background information. *See* Rules of the Court of Federal Claims (RCFC) 12(d) (noting that if matters outside the pleadings are considered on a motion under RCFC 12(b)(6), the motion must be treated as one for summary judgment under RCFC 56); *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir. 2004) (noting that subject matter jurisdiction should be decided on the face of the pleadings). The Court of Appeals of Tennessee found that the Chancery Court for Williamson County had jurisdiction to collect plaintiff's delinquent ad valorem property taxes. *Jesus Christ's Church,* 2011 WL 251212, at *2.

In *Jesus Christ's Church,* the court further found that, "[t]o the extent [plaintiff] challenges

the classification of the property and the amount of the assessment, his failure to exhaust the administrative remedies available to him ... precludes such a challenge." *Id.; cf. id.* at *1 ("Landowner appeals trial court's grant of summary judgment to county in action to enforce delinquent tax lien."). Plaintiff's statement in his amended Complaint that "[d]efendant then ransomed the above described property back to plaintiff by demanding and taking Federal Reserve Note property from plaintiff without compensation in the amount of $15,152 of Federal Reserve Notes," Am. Compl. ¶ 22, suggests that plaintiff's property was not sold to satisfy a tax lien, but that, instead, plaintiff settled his delinquent taxes by paying the state of Tennessee $15,152.

*v. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir.1987) ("[A] court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

██ The Tucker Act establishes and limits the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims). 28 U.S.C. § 1491 (2006). The Tucker Act affords this court jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), it does not confer any substantive rights upon a plaintiff, *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A plaintiff must establish an independent substantive right to money damages from the United States—that is, a money-mandating source within a contract, regulation, statute or constitutional provision—in order for the case to proceed. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed.Cir.2008).

### B. 12(b)(6) Dismissal for Failure to State a Claim

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When determining whether to grant a Rule 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001). " '[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge in unwarranted inferences in order to save a complaint from dismissal.' " *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed.Cir.2011) (alteration in original)

(quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008)). That is, neither "[t]hreadbare recitals of the elements of a cause of action" nor legal conclusions are entitled to the court's presumption of truth. *Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

The purpose of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993). A failure to state a claim upon which relief can be granted warrants a judgment on the merits rather than a dismissal for lack of jurisdiction. *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir. 1995).

### C. Transfer for Lack of Subject Matter Jurisdiction

██ Under 28 U.S.C. § 1631, a federal court may transfer a case to another federal court when (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been brought in the transferee court at the time it was filed; and (3) such a transfer is in the interest of justice. 28 U.S.C. § 1631 (2006); *Joslyn v. United States*, 420 Fed.Appx. 974, 978 (Fed.Cir.2011) (unpublished).

### III. Discussion

For the following reasons, the court must dismiss plaintiff's Amended Complaint for lack of jurisdiction because plaintiff states claims against entities other than the United States or states claims that sound in tort. *See* RCFC 12(h)(3). To the extent plaintiff's Amended Complaint might be construed to state a takings claim against the United States under the Fifth Amendment, plaintiff's claim must be dismissed for failure to state a claim upon which relief can be granted. *See* RCFC 12(b)(6).

### A. The Court Lacks Jurisdiction Over Plaintiff's Claims

Plaintiff appears to state claims only against the state of Tennessee and not

against the United States. Such claims must be dismissed because the jurisdiction of the Court of Federal Claims is limited to suits against the United States. *See United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Plaintiff's tort claims for fraud and emotional distress similarly must be dismissed as beyond the jurisdiction of the court. *See* 28 U.S.C. § 1491; *Montego Bay Imports, Ltd. v. United States,* 25 Cl.Ct. 639, 658 (1992). Because plaintiff does not state any claim for monetary relief over which the court has jurisdiction, plaintiff's requests for declaratory and injunctive relief must also be denied as outside the court's jurisdiction. *See Treece v. United States,* 96 Fed.Cl. 226, 232 (2010).

1. Plaintiff Does Not State a Plausible Claim Against the United States but Instead Appears to State Claims Against the State of Tennessee

Plaintiff alleges that the entity he refers to as the "STATE OF TENNESSEE" is, in fact, an "administrative division," Am. Compl. ¶ 3, or agent of the United States and lacks the authority to tax plaintiff or sell his land, *see id.* ¶¶ 3–6, 8, 10, 36–37; Compl. ¶¶ 8, 29. To support his theory that the actor in question was the United States (acting through its agent, the "STATE OF TENNESSEE"), and not the State of Tennessee, plaintiff points to an entry in the United States Central Intelligence Agency World Factbook (CIA World Factbook) that lists Tennessee as an "Administrative Division" of the United States. *See* Am. Compl. ¶ 6, *id.* at Ex. A (CIA World Factbook). Plaintiff further alleges that "the term agency vs[.] division [is] in substance the same or otherwise would constitute inadvertent clerical error of no undue prejudice." Pl.'s Am. Resp. Ex. 2 (Mem. of Facts) 1.

■ The entry in the CIA World Fact Book is insufficient to persuade the court that the State of Tennessee was acting as an agent of the United States in taxing or seeking to recover taxes on plaintiff's property.

As defendant correctly notes, "Because the taxes and penalties complained of by Mr. Maxwell were assessed in the name of the state of Tennessee, are authorized under the laws of the state of Tennessee,[6] and were sought in a legal action brought by the state of Tennessee, there is every reason to believe that those taxes and penalties were in fact assessed by the sovereign state of Tennessee." Def.'s Am. Mot. 6 (footnote added). Plaintiff has failed to state facts sufficient to raise even an inference that the United States had any role in the injuries he claims. To the extent that plaintiff instead states a claim against the state of Tennessee, the court lacks jurisdiction.

■ The jurisdiction of the Court of Federal Claims is limited to suits against the United States. *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767 (stating, as to the United States Court of Claims—in relevant respects the predecessor to the Court of Federal Claims—"if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court"); *see* 28 U.S.C. § 1491 (providing the Court of Federal Claims jurisdiction over "any claim against the United States," subject to certain exceptions). Moreover, "The federal government is not liable for the actions of nonfederal parties who are not agents of the United States." *Moorish Sci. Temple of Am. v. United States,* No. 11–30 C, 2011 WL 2036714 (Fed. Cl. May 25, 2011) (citing *Fullard v. United States,* 78 Fed.Cl. 294, 296, 300 (2007) ("A plaintiff cannot invoke Tucker Act jurisdiction by merely naming the United States as the defendant in the caption of the complaint but failing to assert any substantive claims against the federal government.")). Also, this court lacks jurisdiction to review state court actions. *Landers v. United States,* 39 Fed.Cl. 297, 301 (1997) (citing *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Therefore, to the extent that plaintiff contests the validity of the taxes assessed by Williamson County, by a municipality within Williamson

---

6. Title 67 of the Tennessee Code governs the assessment and collection of taxes on real property located within Tennessee. Specifically, § 67–5–101 states that all real property "shall be assessed for taxation for state, county and municipal purposes," subject to certain exemptions. Tenn.Code Ann. § 67–5–101 (2012).

County or by the state the Tennessee, the court lacks subject matter jurisdiction. *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767.

### 2. The Court Lacks Jurisdiction Over Plaintiff's Claims for Fraud and Emotional Distress

■ To the extent that plaintiff claims that defendant fraudulently misrepresented itself as the administrative division of the State of Tennessee, Am. Compl. ¶¶ 18, 20, 35; *see also* Compl. ¶¶ 7–8, 27, 29, such a claim sounds in tort, *see Restatement (Second) of Torts (Restatement)* § 525 (1977) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."). Plaintiff also requests compensation for "the injury of emotional distress," Am. Compl. 8, a claim which also sounds in tort, *see Restatement,* § 46 (1965) ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ."); *id.* § 306 ("An act may be negligent . . . if the actor intends to subject, or realizes or should realize that his act involves an unreasonable risk of subjecting, the other to an emotional disturbance of such a character as to be likely to result in illness or other bodily harm.").

The court lacks subject matter jurisdiction over claims that sound in tort. *See* 28 U.S.C. § 1491; *Montego Bay Imports, Ltd.,* 25 Cl. Ct. at 658 (finding that "the essence" of plaintiffs' claims "sound in tort and therefore do not fall within [the court's] Tucker Act jurisdiction"). Because plaintiff's claims of fraud and emotional distress sound in tort, the court lacks jurisdiction over them.

### 3. The Court Lacks Jurisdiction to Provide Plaintiff with Injunctive or Declaratory Relief

■ Plaintiff requests the court to "issue an order enjoining defendant from taking plaintiff's property," Am. Compl. 8, or in the alternative, to "issue an order declaring the defendant United States Government in this instant case is, and represents and acts for, a private entity and which private entity," *id.* at 9. "This Court may issue declaratory judgments or offer equitable relief only under an express grant of such jurisdiction in a federal statute." *Leitner v. United States,* 92 Fed. Cl. 220, 223 (2010) (citing *Testan,* 424 U.S. at 398, 96 S.Ct. 948; *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). In other words, "The Court of Federal Claims may grant equitable relief ancillary only to those claims for monetary relief over which it has jurisdiction." *Treece,* 96 Fed.Cl. at 232 (citing 28 U.S.C. § 1491(a)(2), (b)(2)); *Acceptance Ins. Cos. v. United States,* 503 F.3d 1328, 1338 (Fed.Cir.2007). Because the court lacks jurisdiction over plaintiff's tort claims, *see supra* Part III.A.2, and also dismisses plaintiff's takings claim, *see infra* Part III.A–B, the court also lacks jurisdiction over plaintiff's claims for declaratory and injunctive relief.[7]

### B. To the Extent Plaintiff Asserts a Takings Claim Against the United States, Plaintiff Fails to State a Claim Upon Which Relief Can be Granted

■ Drawing all inferences in plaintiff's favor, even if plaintiff could demonstrate later in the proceedings that the United States was the relevant actor, *see* Pl.'s Am. Resp. 3 ("Proof is available that no sovereign state was involved and the United States is the party in interest to be submitted at the proper time . . . ."), plaintiff fails to state a plausible claim for a Fifth Amendment taking. Plaintiff challenges the government's authority to tax him; however, a court must assume in the context of a Fifth Amendment takings claim that the government's action was lawful. *Acadia Tech., Inc. v. United States,* 458 F.3d 1327, 1331 (Fed.Cir.2006). Moreover, the lawful exercise of the government's pow-

---

7. Plaintiff also filed a motion for a preliminary injunction or temporary restraining order. Pl.'s Ex-Parte Appl. for Prelim. Inj. Relief or TRO, Dkt. No. 4. This court may provide declaratory or injunctive relief only in limited circumstances inapplicable here and, accordingly, the court DENIES the motion.

er to tax does not result in a taking. *Gregoline v. United States*, 99 Fed.Cl. 161, 168 (2011).

Plaintiff maintains that the United States is responsible for the taking of plaintiff's property without just compensation "because its administrative division(s) is/are acting pursuant to United States Government authority." Am. Compl. ¶ 36; *see also id.* ¶¶ 3–6, 37; *cf. id.* ¶ 10, 10 n. 1 (listing the "divisions, agencies, instrumentalities and subdivisions" of the "STATE OF TENNESSEE"). Plaintiff alleged in his Complaint that defendant "intends to imminently sell plaintiff's property to itself or a third party on October 27, year of our Lord 2011 to satisfy its fraudulent claim, plus interest of 18% and penalties to date of sale, a sum currently of approximately [$]35,979 in Federal Reserve Notes," and that such sale would deprive plaintiff of his "guaranteed property rights." Compl. ¶ 12. In his Amended Complaint, plaintiff states that "defendant ... pretended to proceed to collecting said taxes and personal debt by demanding fiat Federal Reserve Notes from plaintiff or else the taking would occur as if it were said tax matter for the purpose to avoid compensation." Am. Compl. ¶ 13. However, it appears that plaintiff's real property was not, in fact, taken or sold by any governmental entity, but rather that plaintiff paid $15,152 to settle his delinquent taxes. *See id.* ¶ 22 ("Defendant ... ransomed the above described property back to plaintiff by demanding and taking Federal Reserve Note property from plaintiff without compensation in the amount of $15,152 ...."). Accordingly, the court understands that plaintiff attempts in his Amended Complaint to state a claim for the taking of his personal property, that is, a payment in the amount of $15,152.

Nevertheless, plaintiff appears to contest that his case is at all related to taxation, stating that "[t]here is no extent to which plaintiff contests taxes in the complaint." Pl.'s Am. Resp. 2. But plaintiff cites no specific facts to support his allegation that this dispute does not relate to the payment or nonpayment of taxes, and plaintiff's own description of events strongly suggests that plaintiff is complaining about taxation of his property. *See, e.g.,* Am. Compl. ¶¶ 10 ("Defendant ... masqueraded as 'The State of Tennessee' seeking collections of property taxes ...."), 11 ("[D]efendant intentionally pretended to increase interest and penalties and tax amounts as personal debt disguised as intentionally unprosecuted land property tax suits ...."), 12 (" 'The State of Tennessee' has enacted a property 'use' tax for the taxable use of land in 'The State of Tennessee ...' "), 13 ("[D]efendant then pretended to proceed to collecting said taxes and personal debt by demanding fiat Federal Reserve Notes from plaintiff or else the taking would occur as if it were said tax matter for the purpose to avoid compensation."), 17 ("[D]efendant attempted to tax, and impose a tax liability upon, plaintiff's free exercise of my constitutionally guaranteed and untaxable rights to property coming under my rights to life and liberty ...."). Plaintiff's allegation that the government's alleged taking was not the result of a dispute regarding the payment of taxes, when his description in his Amended Complaint suggests just the opposite, is not entitled to a presumption of truth on a motion to dismiss. *See Iqbal,* 129 S.Ct. at 1949–50 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) for the proposition that the court need not accept as true a legal conclusion presented as a factual allegation and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Defendant contends that plaintiff fails to state a valid takings claim because plaintiff challenges the lawfulness of the government's conduct, an allegation beyond the scope of a takings case—in which a court assumes that the government's conduct is lawful, *id.* at 7–8. The court agrees.

■ Plaintiff challenges the authority of the entity he refers to as the "STATE OF TENNESSEE" and the United States to tax him.[8] *See* Am. Compl. ¶¶ 10, 18. As defen-

---

8. The court notes that despite plaintiff's statement in his Amended Complaint that defendant sought "collections of property taxes in a manner

which is unconstitutional," Am. Compl. ¶ 10; *see also id.* ¶ 18, in his Amended Response, plaintiff attempts to recharacterize his challenge to the

dant correctly notes, a Fifth Amendment takings claim is not an appropriate action to challenge the lawfulness of the government's conduct. *See* Def.'s Am. Mot. 7–8. "[A]n uncompensated taking and an unlawful government action constitute 'two separate wrongs [that] give rise to two separate causes of action....'" *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed.Cir. 2001) (second alteration in original) (quoting *Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed.Cir.1998)).

> [I]n a takings case [the court] assume[s] that the underlying action was lawful and ... decide[s] only whether the governmental action in question constituted a taking for which compensation must be paid. [A plaintiff's] complaints about the wrongfulness of the [government action] are therefore not properly presented in the context of its takings claim.

*Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352–53 (Fed.Cir.2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002). Notwithstanding plaintiff's apparent challenge to the lawfulness of the government's actions, *see* Pl.'s Am. Compl. ¶¶ 10, 18, the court must assume in this Fifth Amendment takings case that the government's actions were lawful, *see Acadia Tech., Inc.*, 458 F.3d at 1331 ("For takings purposes, we therefore must assume the government conduct at issue in this case was not unlawful.").

Assuming, then, the lawfulness of the government's action, *Acadia Tech., Inc.*, 458 F.3d at 1331, neither the apparent tax lien nor the tax assessed[9] was a taking. "[T]he lawful exercise of the Government's tax collection powers does not amount to a taking." *Gregoline*, 99 Fed.Cl. at 168 (citing *Fry v. United States*, 72 Fed.Cl. 500, 509 (2006); *Skillo v. United States*, 68 Fed.Cl. 734, 743 (2005) (holding that the lawful collection of taxes does not amount to a prohibited Fifth Amendment taking)). Because plaintiff has

failed to state facts sufficient to raise any inference in his favor that this is a Fifth Amendment taking separate and apart from the imposition of taxes on his property, *see supra; Juniper Networks, Inc.*, 643 F.3d at 1350 (noting that a court need not "indulge in unwarranted inferences in order to save a complaint from dismissal"), and because the imposition of lawful taxes does not constitute a taking, *see Gregoline*, 99 Fed.Cl. at 168, plaintiff fails to state a claim upon which relief can be granted, *see* RCFC 12(b)(6).

### C. Transfer of the Case to Another Court Is Not Appropriate

■ Although not requested to do so by plaintiff, the court considers sua sponte whether "it is in the interest of justice" to transfer plaintiff's Amended Complaint to another court under 28 U.S.C. § 1631. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374–75 (Fed.Cir.2005) (stating that the Court of Federal Claims should have considered whether transfer was appropriate once the court determined that it lacked jurisdiction and noting that the court may "order[ ] transfer without being asked to do so by either party"). The court considers transfer in this case because plaintiff is proceeding pro se, *see Skillo*, 68 Fed.Cl. at 743 n. 15 ("Although plaintiffs have not requested a transfer, because they are proceeding pro se, the court addresses the possibility."), and because the transfer statute language "persuasively indicates that transfer, rather than dismissal, is the option of choice," *Britell v. United States*, 318 F.3d 70, 73 (1st Cir.2003) (citing 28 U.S.C. § 1631). "The court will transfer a case when a plaintiff articulates a clearly stated and nonfrivolous complaint." *Schrader v. United States*, 103 Fed.Cl. 92, 101 (2012) (citing *Phang v. United States*, 87 Fed.Cl. 321, 330–31 (2009) (determining that it was not in the interest of justice to trans-

---

government's authority, stating that "[t]he complaint, by express averments otherwise, does not claim unlawful taxation," Pl.'s Am. Resp. 2.

**9.** It appears to the court that plaintiff is complaining about property taxes assessed against him and a related tax lien. *See supra* Part III.B; Compl. ¶ 7 (alleging that defendant misrepresented itself as the "State of Tennessee ... to collect

ad valorem land taxes ... resulting in defendant's seizing and taking of, or acquiring interest in, plaintiff's private property"); *see generally Jesus Christ's Church*, 2011 WL 251212, at *1 (noting that the lawsuit against Mr. Maxwell "was instituted pursuant to the provisions of Tenn.Code Ann. § 67–5–2401, *et seq.*, to recover delinquent ad valorem property taxes").

fer plaintiff's claims because, in the court's view, plaintiff's claims were "unlikely to be meritorious in another court of the United States"), *aff'd*, 388 Fed.Appx. 961 (Fed.Cir. 2010) (unpublished)). The court determines that it is not "in the interest of justice" to transfer plaintiff's Amended Complaint, *see Tex. Peanut Farmers*, 409 F.3d at 1374, because plaintiff's claims are "unlikely to be meritorious in another court of the United States," *see Phang*, 87 Fed.Cl. at 330.

## IV. Conclusion

The Clerk of Court is directed to DISMISS the Amended Complaint.

IT IS SO ORDERED.